## H.O.R.S.E. OF CONNECTICUT, INC. *v.* TOWN OF WASHINGTON
## (AC 18353)

Lavery, Hennessy and Vertefeuille, Js.

Argued October 27, 1999—officially released March 21, 2000

*William C. Franklin,* for the appellant (defendant).

*Jeffrey J. Tinley,* with whom was *Robert Nastri, Jr.,* for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendant, the town of Washington, appeals from the trial court's judgment granting the motion by the plaintiff, H.O.R.S.E.[1] of Connecticut, Inc., for summary judgment stemming from its claim for a tax exemption. The defendant claims that the court improperly rendered summary judgment because (1) there were material issues of fact in dispute and (2) even if there were no material issues of fact in dispute, as a matter of law, the plaintiff is not a charitable organization within the meaning of General Statutes § 12-81 (7). We affirm the judgment of the trial court.

The court's memorandum of decision sets forth the following facts. The town of Washington board of assessment appeals denied the plaintiff's claim for an exemption from local taxation as to a forty-six acre parcel of land that the plaintiff owns and operates as

[1] The acronym H.O.R.S.E. stands for "Humane Organization Representing Suffering Equines."

a farm for injured, distressed and mistreated horses. The plaintiff appealed to the Superior Court, claiming that it is entitled to a tax exemption under § 12-81 (7) because it is a corporation organized exclusively for charitable purposes, and it uses the property exclusively to carry out such purposes. The court noted that the plaintiff's corporate charter reveals that its objectives are to "unite into one organization the care of all abused, neglected, unwanted and lost domestic hoofed animals"; to "provide education and training pertinent to the care of hoofed animals for employees, members and officers, and the community as a whole"; and "to safeguard, advance and promote the safety and well-being of domestic hoofed animals by political, educational and other community activity." The plaintiff's president, Patricia Wahlers, resides on the property in a home and cares for the horses.

After the plaintiff and the defendant each filed motions for summary judgment, the court granted the plaintiff's motion, finding as a matter of law that the plaintiff is a charitable organization that uses its property exclusively for charitable purposes.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Tarzia* v. *Great Atlantic & Pacific Tea Co.*, 52 Conn. App. 136, 145, 727 A.2d 219 (1999).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995)." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

I

The defendant claims first that the motion for summary judgment was improperly granted because a genuine issue of material fact exists as to whether the plaintiff operates a commercial boarding facility, which would call into question whether the plaintiff's property is used exclusively for charitable purposes as is required under § 12-81 (7) for a tax exemption.[2] We are unpersuaded.

---

[2] Section 12-81 (7) provides a tax exemption for "the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b) in 1965, and quadrennially thereafter, a statement on forms prepared by the Secretary of the Office of Policy and Management shall be filed on or before the last day required by law for the filing of assessment returns with the local board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated. . . ."

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 255, 654 A.2d 748 (1995).

Relying on Wahlers' deposition and an affidavit of the plaintiff's accountant, the defendant claims that there is a dispute as to whether the plaintiff is operating a commercial boarding facility. The defendant cites to Wahlers' deposition testimony that people can and do board healthy horses for a monthly fee on the property. The plaintiff claims that some of these horses are "adopted," having been rehabilitated, while others are healthy and remain on the property for a fee. The plaintiff does not dispute that horses are boarded on the property for a monthly fee. It contests only the label of "commercial boarding facility." Regardless of the terminology, some horses stay on the property for a monthly fee. That fact is not in dispute. The defendant's conclusory assertion that such boarding constitutes a "commercial boarding facility" is a characterization of the facts and not a demonstration that there is a genuine issue of material fact in dispute.[3]

---

[3] The defendant also noted in its brief that the source of funding for the plaintiff's operation was in dispute. We can find no dispute as to the source of funding for the plaintiff. The plaintiff claims that its primary source of funds is grants and contributions. The defendant claims that 40 percent of the plaintiff's funding is received from boarding horses. The plaintiff does not dispute this fact.

II

The defendant claims next that even if the material facts are not in dispute, the court nevertheless improperly granted the plaintiff's motion for summary judgment because the plaintiff is not entitled to judgment as a matter of law. The defendant claims that the plaintiff (1) is not a charitable organization within the meaning of § 12-81 (7) and (2) does not use the property exclusively for carrying out charitable purposes. We disagree.

Our Supreme Court has held that "[i]t is a settled rule of law that statutes which exempt from taxation are to be strictly construed against the party claiming an exemption. *Crescent Beach Assn.* v. *East Lyme*, 170 Conn. 66, 71, 363 A.2d 1045 (1976); *Wiegand* v. *Heffernan*, 170 Conn. 567, 582, 368 A.2d 103 (1976); *Hartford Hospital* v. *Board of Tax Review*, 158 Conn. 138, 147, 256 A.2d 234 (1969). Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. *Hartford* v. *Hartford Theological Seminary*, 66 Conn. 475, 482–83, 34 A. 483 (1895); *Woodstock* v. *The Retreat, Inc.*, 125 Conn. 52, 56, 3 A.2d 232 (1938)." (Internal quotation marks omitted.) *United Church of Christ* v. *West Hartford*, 206 Conn. 711, 718, 539 A.2d 573 (1988). " 'It is also well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption. *Curly Construction Co.* v. *Darien*, 147 Conn. 308, 160 A.2d 751 (1960); *Burritt Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 154 A.2d 608 (1959); *Cooley Chevrolet Co.* v. *West Haven*, 146 Conn. 165, 148 A.2d 327 (1959); *Forman Schools, Inc.* v. *Litchfield*, 14 Conn. Sup. 444, rev'd on other grounds, 134 Conn. 1, 54 A.2d 710 (1947).' *Faith Center, Inc.* v. *Hartford*, [39 Conn. Sup. 142, 153–54, 473 A.2d 342 (1982), aff'd, 192 Conn. 434, 472 A.2d 16, cert. denied,

469 U.S. 1018, 105 S. Ct. 432, 83 L. Ed. 2d 359 (1984)]."
*United Church of Christ* v. *West Hartford,* supra, 719.

Our Supreme Court has recognized that "the 'definition of charitable uses and purposes has expanded with the advancement of civilization and the daily increasing needs of men.' *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan,* 147 Conn. 510, 514, 162 A.2d 700 (1960). The *Camp Isabella [Freedman of Connecticut, Inc.,]* court continued: 'It no longer is restricted to mere relief of the destitute or the giving of alms but comprehends activities, not in themselves self-supporting, which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens. *Bader Realty & Investment Co.* v. *St. Louis Housing Authority,* 358 Mo. 747, 752, 217 S.W.2d 489 [1949]. Charity embraces anything that tends to promote the well-doing and the well-being of social man. Ibid. An institution is charitable when its property and funds are devoted to such purposes as would support the creation of a valid charitable trust. *Davie* v. *Rochester Cemetery Assn.,* 91 N.H. 494, 495, 23 A.2d 377 [1941].' [*Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan,* supra], 514–15." *United Church of Christ* v. *West Hartford,* supra, 206 Conn. 719–20.

Despite the broadened definition of "charitable uses and purposes," however, the defendant claims that the plaintiff cannot be considered a charitable organization because it promotes the well-being of horses, not that of social man. In addressing this claim, the court noted that the purpose of the plaintiff corporation is obviously designed to serve the well-being of horses. Furthermore, the court concluded that the promotion of this purpose has long been understood to promote the well-being of social man. In *Shannon* v. *Eno,* 120 Conn. 77, 81, 179 A. 479 (1935), our Supreme Court construed a

will provision that called for setting aside $2000 "for the purpose of founding and supporting a Catery, to be situated in or near Ansonia, for the care of homeless animals and boarders." (Internal quotation marks omitted.) In concluding that this will provision created a charitable trust, the court noted that "[t]he intention of the testatrix in making the gift . . . was obviously to afford care and protection to and alleviate the sufferings of that class of animals which by domestication contribute to comfort, pleasure and well being of man; and it is not questioned that such a gift is a proper charitable use." (Citations omitted.) Id., 82.

In the present case, it also is obvious that the purpose of the plaintiff corporation is to give care and protection to a class of animals that contribute to the comfort, pleasure and well-being of people. Because such a purpose supports the creation of a valid charitable trust and because an institution is charitable when its property and funds are used for such purposes as would support the creation of a valid charitable trust; *United Church of Christ* v. *West Hartford,* supra, 206 Conn. 719; we conclude that the plaintiff corporation is a charitable institution.

The defendant also claims that the plaintiff does not use its property exclusively for a charitable purpose. To support its claim, the defendant cites Wahlers' testimony that people can and do board healthy horses on the property for a monthly fee. Additionally, the defendant notes that Wahlers resides on the property, that other people have resided on the property with her and that Wahlers gives riding lessons on the property that give her a modest personal income.

The plaintiff does not dispute these facts. Rather, it claims that all of the revenue generated from boarding fees is applied exclusively to the plaintiff's charitable purposes, and that the sum of all such revenues is insuf-

ficient to support the plaintiff's charitable activities without grants and donations from private sources. In addition, the plaintiff asserts that providing housing to Wahlers and the right to use the property to give lessons never has been held to disqualify an otherwise tax-exempt entity.

" 'Whether the property for which exemption is claimed is actually and exclusively used for . . . [charitable] purposes must be determined from the facts of the case.' [*Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, supra, 147 Conn. 514]." *Waterbury First Church Housing, Inc.* v. *Brown*, 170 Conn. 556, 561, 367 A.2d 1386 (1976). Our Supreme Court has stated that "[t]he existence of a purpose that can be characterized as charitable . . . does not in itself render a corporation charitable and tax-exempt. An institution must be exclusively charitable, not only in the purposes for which it is formed and to which its property is dedicated, but also in the manner and means it adopts for the accomplishment of those purposes." Id., 562.

"Connecticut law for over 150 years has recognized that an essential characteristic of a charitable organization, besides a charitable purpose, is that it achieve its purpose 'through the means of funds, derived from the gratuities of the benevolent.' *American Asylum* v. *Phoenix Bank*, 4 Conn. 172, 177 [1822]." *Waterbury First Church Housing, Inc.* v. *Brown*, supra, 170 Conn. 562. Therefore, in *Waterbury First Church Housing, Inc.*, our Supreme Court concluded that a corporation, which provided elderly housing for residents who paid rent but did not receive any donations to assist in its operations, did not show sufficient private intervention to earn charitable status. Id., 564. The court noted that it did not appear that the corporation was the beneficiary of private donations, and that the only funds on which it relied were the rental income from its tenants and the federal subsidies it received. Id.

In addition, quoting courts in other jurisdictions, our Supreme Court noted that an institution may qualify for a tax exemption where "aid is dispensed to those in sickness or distress without regard to poverty or riches of the recipient and the funds, property and assets of such institution are placed and bound by its laws to relieve, aid and administer to the relief of those in want, sickness and distress." (Internal quotation marks omitted.) Id., 565.

In the present case, the plaintiff is a corporation, the aim of which is to help distressed, abused and needy horses. The plaintiff aids horses regardless of their owners' ability to pay for the services. The animals that require rehabilitation are cared for until they can be adopted. If no one adopts a horse, the plaintiff retires the horse on its property and maintains the animal at no charge until its death. If a horse is adopted, the plaintiff charges the adopting owner $300 per month— all the proceeds of which are used to maintain the adopted horse as well as the other horses that have not been adopted. Moreover, more than one half of the plaintiff's income was derived from donations, grants and fund-raisers. These funds, in turn, are spent to further the plaintiff's charitable purpose.

None of these funds is used to compensate Wahlers for the duties she performs for the plaintiff. Wahlers provides around-the-clock attention to the animals under the plaintiff's care. As part of her duties, she attends to after-hours and early morning care and feedings, as well as emergency care and supervision for the horses. The plaintiff provides housing to Wahlers so she can remain near the horses in case of an emergency and also allows her to give riding lessons that give her a modest personal income.

Officers, members and employees must not receive any pecuniary profit from the operation of the corpora-

tion other than reasonable compensation for their services. See *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, supra, 147 Conn. 512; *Charter Oak Council, Boy Scouts of America* v. *New Hartford*, 121 Conn. 466, 473, 185 A. 575 (1936). There are no facts alleged that Wahlers makes any *profit* from the operation of the plaintiff corporation or receives anything other than reasonable compensation for her services by giving riding lessons to provide herself with food and clothing. Because no one receives a profit from the plaintiff's operation, all the money generated from the boarding of horses is used for the plaintiff's charitable purposes and the majority of the plaintiff's income is generated from donations, we conclude that the plaintiff is a charitable organization that uses its property exclusively for charitable purposes.

The judgment is affirmed.

In this opinion the other judges concurred.