[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#137.00)
CT Page 7931
The plaintiffs in this action are Marianne G. Cassidy, Executrix of the Estate of Jane M. Gartland, and Elizabeth Cook. The complaint arises from Jane M. Gartland's death while she and Cook were on a travel tour in Europe in 1996. The complaint names five defendants, including Monumental Life Insurance Company (Monumental) and Trip Mate Insurance (Trip Mate), who have filed a motion for summary judgment.
 I — FACTS
The plaintiffs allege the following facts in their complaint. In April 1996, Cook and Gartland purchased from Trafalgar Tours (Trafalgar) a guided European tour which was to take place in August 1996. At the same time, they also purchased travel insurance. The plaintiffs allege that the policy was issued by the defendants Trafalgar and Monument Life. (Monumental is incorrectly named in the complaint as "Monument Life Insurance Company").
Cook and Gartland began the tour on August 8, 1996. While on the tour, Gartland experienced worsening physical problems which were brought to the attention of the Trafalgar tour guide. On August 20, 1996, both Cook and Gartland were stricken with a severe respiratory infection. On August 21, 1996, Gartland died in her hotel room on tour. The plaintiffs allege that the cause of death was congestive heart failure.
The evidence indicates that, following the decedent's death, her son, James M. Gartland, spoke to a Trafalgar representative. James Gartland, who is also Cook's nephew, was counseled by the Trafalgar representative on arrangements for the repatriation of his mother's remains back to the United States, and on the emergency return of Cook to the United States. (James Gartland February 2002 Affidavit, ¶ 4.) James Gartland states that he was informed by the Trafalgar representative that the travel insurance that the decedent and Cook purchased provided for reimbursement of expenses incurred in connection with the repatriation of the decedent and Cook's return home. (Id.) After determining that it would be necessary for him to travel to Germany to effectuate the repatriation of the decedent's remains and Cook's return to the United States, James Gartland states that the Trafalgar representative informed him that the travel insurance would also cover his travel and accommodation expenses. (James Gartland February 2002 Affidavit, ¶ 7.)
In count three of the second amended complaint, the plaintiffs allege a cause of action against Monumental for breach of contract for "failing to provide promised medical care, attention, monitoring and assistance, resulting in the death of the decedent." In the fifth count, the CT Page 7932 plaintiffs allege the same claim against Trip Mate. In count eight, the plaintiffs allege a cause of action against Monumental for breach of contract for failing to pay for and/or reimburse the plaintiffs for all the expenses and costs they incurred as a result of the decedent's death, which include the repatriation of the decedent's remains and resulting trip cancellation, and the expenses resulting from Cook's illness and resulting trip cancellation. In count ten, the plaintiffs allege the same claim against Trip Mate.
On November 30, 2001, Monumental and Trip Mate filed a motion for summary judgment dismissing counts three, five, eight and ten of the second amended complaint. The plaintiffs filed their objection to the motion on February 19, 2002.
 II — DISCUSSION
A. Standard of Review
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [17-46]." (Brackets in original; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 559, 783 A.2d 993 (2001).
"[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Brackets in original; internal quotation marks omitted.)H.O.R.S.E. of Connecticut, Inc. v. Washington, supra, 258 Conn. 560.
The courts hold the movant of a summary judgment motion to a strict standard when determining if he has met the burden of showing the absence of any genuine issue as to all the material facts thereby entitling him CT Page 7933 to judgment as a matter of law. See, e.g., Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7, 746 A.2d 753 (2000). Therefore, in order to prevail on their motion, Monumental and Trip Mate, as "the [movants] must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Id. "It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantialevidence outside the pleadings to show the absence of any material dispute." (Emphasis in original; internal quotation marks omitted.) Dotyv. Shawmut Bank, 58 Conn. App. 427, 430, 755 A.2d 219 (2000).
B. The Provision of Medical Services
In count three the plaintiffs allege that under the terms of the travel insurance policy issued by Monumental and administered by Trip mate, the defendants were to provide, and Gartland and Cook were to receive, certain specified benefits including medical assistance and medical attention when needed on the tour (count three ¶ 16) and that Monumental breached the contract by failing to provide the medical assistance and attention (Id., ¶ 17). In count five, the same allegations are made against Trip Mate. Monumental and Trip Mate submitted several documents in support of their motion including a copy of the insurance brochure which constitutes the policy in this case and which describes the benefits provided therein. (Defendants' Exhibit A.) The policy expressly provides a benefit in the form of payment of certain expenses arising from; physician-ordered medical services, ambulance services, prescription medications, emergency dental treatment, expenses incurred for medical evacuation, transportation, and preparation and transport of remains to the United States. (Defendants' Exhibit A.) The insurance plan also provides a 24-hour multilingual telephone service, which is described as one that provides help and advice with medical emergencies by helping to locate physicians, dentists, or medical facilities, helping to arrange and paying for medical evacuations, providing emergency medical payments, and providing a telephone interpretation service to transmit messages to family, friends, and business. (Defendants' Exhibit A.) Monumental and Trip Mate contend that no part of the policy provides that Trip Mate or Monumental contracted to provide actual medical care to insureds while on vacation.
The terms of an insurance policy are to be construed according to the general rules of contract construction. Buell Industries v. Greater NewYork Mutual Ins., 259 Conn. 527, 538, 791 A.2d 489 (2002). The terms of a policy are to be given their plain and ordinary meaning. The interpretation of whether an insurance policy is ambiguous is a matter of law for the court to decide, and a provision in an insurance policy is CT Page 7934 ambiguous when it is reasonably susceptible to more than one reading.Metropolitan Life Ins. v. Aetna Casualty Surety Co., 255 Conn. 295, (2001). In deciding whether the policy is ambiguous, the court must view the policy from the perspective of a reasonable layperson in the position of the purchaser of the policy. Israel v. State Farm Mutual AutomobileIns. Co., 259 Conn. 503, 508, 789 A.2d 974 (2002).
The language of the insurance policy in this case is not ambiguous. There is no language providing for the type of medical assistance and care that the plaintiffs allege should have been provided as part of the benefits under the policy. Moreover, the policy expressly provides that Monumental shall not be responsible for the availability, quality, or results of any medical treatment or [the] failure to obtain medical treatment. (Defendants' Exhibit A, page 7.) Lastly, reasonable lay persons understand that insurance companies and agencies do not provide medical care; that is, in most cases, provided by licensed medical practitioners and facilities. At most, insurance companies and agencies provide the means to pay for medical care. The plaintiffs have not submitted any evidence to support their allegation that the travel insurance policy required Trip Mate or Monumental to provide the type of medical care that they allege in their complaint.
The plaintiffs argue that the "Trafalgar Tours" logo displayed on the cover page[1] of the insurance brochure raises a genuine issue of material fact whether the Trafalgar personnel who accompanied Gartland and Cook on the trip, were acting as agents of Monumental in determining the need for providing medical attention. In their complaint, however, the plaintiffs do not allege that Trafalgar is an agent of Monumental, nor do they submit any evidence in support of such an argument. "To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief." (Citations omitted.) New Milford Savings Bank v. Roina, 38 Conn. App. 240, 244,659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).
"The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 663, 691 A.2d 1107 (1997). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) 2380 Whitney AvenueCorp. v. Heritage Canal Development Associates, Inc., 33 Conn. App. 563,569, 636 A.2d 1377 (1994). CT Page 7935
Because the policy did not obligate the defendants to provide for the actual "medical care, attention, monitoring and assistance" and the plaintiffs did not submit any evidence to substantiate their allegations that it did so, Monumental and Trip Mate cannot be found in breach of any contractual obligations for not providing such services. The court grants their motion for summary judgment on counts three and five.
C. Failure to Pay Policy Benefits
In counts eight and ten, the plaintiffs allege that Monumental and Trip Mate "breached their contractual obligations by failing to pay for and/or reimburse the plaintiffs for all of the expenses and costs incurred as a result Cook's illness and the decedent's death" which include, "trip cancellation and/or interruption and the emergency evacuation and repatriation." (Second Amended Complaint, count eight, ¶ 19; count ten, ¶ 19.) The insurance brochure sets forth the procedure for claim submission. (Defendants Exhibit A.) A claim is to be reported as soon as possible. Once the claim is reported, the claimant will be mailed a claim form to complete and return along with supporting documentation. According to the brochure, Trip Mate is designated as the Program Administrator to whom the claims are to be reported.
Contrary to the plaintiffs allegations, Monumental and Trip Mate contend that "[a]ll claims that have been submitted . . . regarding the plaintiff have been paid." (Defendants' Memorandum.) In support of this contention, they submit an affidavit by Michael Dailey, the accounting manager for Monumental. Dailey avers that "it is the regular course of business for Monumental to create a record for every claim report and payment of claim." (Dailey Affidavit, Exhibit 1, ¶ 4.) Dailey also avers that "using Monumental's funds, Trip Mate sent $4,978.34 for repatriation costs of [the decedent]." Monumental has not received any other claims either by Cook, or on behalf of Cook or the decedent, and "all claims submitted regarding this matter have been paid." (Dailey Affidavit, Exhibit 1, ¶¶ 7 17.)
Monumental and Trip Mate also submit an affidavit by Linda Finkle, executive vice president of Trip Mate. In her affidavit, Finkle avers that "[i]t is the regular course of business for Trip Mate to create a record for every claim report and . . . to create a record of conversations with insureds." (Finkle Affidavit, Exhibit 2, ¶ 4.) According to Finkle, after Trip Mate was notified on August 21, 1996, of the decedent's death and Cook's return, Trip Mate forwarded claim forms to the decedent's and Cook's home addresses. (Finkle Affidavit, Exhibit 2. ¶ 16.) Finkle attests that no further claims were made following Trip Mate's processing of the repatriation payment of $4,978.34. She also states that on November 13, 1996, Trip Mate mailed out to the decedent's CT Page 7936 and Cook's home addresses reminder postcards stating in relevant part: "It has been 60 days since our office sent you travel insurance claim forms and to date we have not received the submission of your claim." (Finkle Affidavit, Exhibit 1, ¶ 17.) Finkle confirms that on December 10, 1996, James Gartland contacted Trip Mate in response to receiving a post card. At that time, according to Finkle, James Gartland conveyed to the Trip Mate representative that he was not sure if he had sent in claim forms, but would check. Following that contact on December 10. 1996, "Trip Mate did not receive any further communication from Gartland, Cook, or anyone else on behalf of the decedent or Cook." (Finkle Affidavit, Exhibit 1, ¶ 21.)
The plaintiffs argue in their memorandum in opposition that the "policy brochure . . . does not indicate anywhere that the filling out of a claim form is a condition precedent to having a claim paid." (Plaintiffs' Memorandum, p. 6.) That is true. The plaintiffs do concede, however, that the brochure sets forth a procedure for submitting claims and while they contend that Monumental and Trip Mate were notified that "the families were making a claim under the policy," nowhere do they assert that claims were in fact submitted to either Trip Mate or Monumental.
James Gartland has submitted two affidavits in opposition to the pending motion. The first is dated December 5, 2000 and was originally submitted in connection with another motion in this case. The second is dated February 15, 2002 and among other things, this second affidavit specifically reaffirms the statements made in his 2000 affidavit. Neither of these affidavits, the most recent of which was made after receipt of the defendants' pending motion asserting the lack of a claim, makes any effort to assert that a claim was filed by either Cook or the Gartland Estate seeking benefits under the policies, or that such claim was denied in whole or in part before this lawsuit was commenced. Neither affidavit controverts or rebuts in any fashion the defendants' affidavits to the effect that claim forms were sent to James Gartland and that a follow-up call occurred as to whether a claim was to be filed, and that there was no response forthcoming. In fact, the evidence is quite conclusive that James Gartland, who was so very thorough and conscientious in taking care of his aunt and his mother's remains, in a time of personal sorrow, as well as informing himself of the existence of travel insurance, inexplicably, did not make any claim to Trip Mate or Monumental for payment of insurance benefits prior to institution of this case.
James Gartland's affidavits recite his communications with Trafalgar Tours and Trip Mate in August 1996 when he was first informed of his mother's death and his aunt's illness. He immediately traveled to Germany and made arrangement to have his mother's body returned to the United States and oversaw his aunt's health and return home as well. In his 2002 CT Page 7937 affidavit James Gartland states that Monumental and Trip Mate have had a full statement of the insurance claim made on behalf of the Gartland Estate and Cook since December 1998. He refers in this regard to a letter he wrote to attorneys representing defendants in this case on December 23, 1998 which letter includes specific itemized claims under the policy in the amount of $3,331.19 for Cook and for the Gartland Estate the amount $33,769.91. The problem with this letter is that it was sent after this breach of contract suit was commenced in October, 1998. In fact, the letter states at its outset that it "is an offer of settlement and as such, nothing contained in . . . [it] . . . may be used in any future court proceedings. . . ."
There is nothing in the two Gartland affidavits or other documents submitted by the plaintiffs' to rebut the evidence presented by Monumental or Trip Mate that no claim form was filed; that no requests for payment were forthcoming (on a claim form, or otherwise). In the absence of any evidence of that nature, the court cannot find any factual or legal basis for a breach of contract action based on a failure to pay expenses that were never quantified or submitted.
There is, however, one part of the plaintiffs' claims against Trip Mate and Monumental under counts eight and ten that bear further scrutiny. James Gartland's 2002 affidavit states that before he left for Germany in August 1996 he had confirmed that his mother and aunt had purchased travel insurance. (James Gartland 2002 Affidavit, ¶ 4.) He states that a Ms. Brooks of Trafalgar confirmed "that all of the expenses, and specifically my travel and accommodation expenses, incurred in getting my aunt and mother's remains back to the United States would be covered [under the policy]" and that he received confirmation of that point from at least one representative of Trip Mate. (Id. ¶ 7.). He continues by stating he had a clear understanding and agreement that his expenses incurred with respect to evacuation and repatriation would be covered up to $25,000.00. (Id. ¶ 8)
James Gartland's 2002 affidavit states that he "requested and received" two written confirmations of this coverage and then refers to documents attached to his 2000 affidavit. A carful review of these documents does not reveal any direct confirmation. However, there is a document. apparently handwritten by James Gartland and faxed to a Tamara Donadio in August 1996 stating: "this will confirm you will now fax . . . written confirmation of insurance carrier's authorization of payment of expenses re repatriation of my mother's remains up to $25,000.00." That document also sets forth the dollar amount of a airline ticket for his aunt. The court does not know who Ms. Donadio is or by whom she was employed.
In sum, while James Gartland's affidavits are not necessarily supported CT Page 7938 by the documentation, his affidavits are evidence that he requested payment for his expenses associated with his emergency trip to Germany. There is also evidence that one of those expenses was quantified. It is not this court's function to weigh the credibility of evidence on a motion for summary judgment. Thus, with respect to counts eight and ten, the court grants the defendants' motion to dismiss all claims for benefits excepting those which seek reimbursement for the expenses incurred by James Gartland on his trip to Germany in 1996, including the Cook airline ticket. As to those, the court finds there are at least the following unresolved factual issues: (1) whether the defendants agreed to pay those expenses, (2) whether the expenses are covered under the policy, and (3) whether the defendants were provided, or had, sufficient information so that their failure to pay constituted a breach of contract and (4) whether the plaintiffs have standing to seek reimbursement of those expenses since James Gartland is not a plaintiff, or an insured.
So ordered.
 ___________________ ADAMS, J.