[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter appears before the court concerning the defendants' motion for summary judgment (#106). After considering the parties' written submissions and their arguments, and for the reasons set forth below, the court finds that summary judgment is warranted and grants the motion.
 I. BACKGROUND
In their amended complaint in this action, dated September 10, 2001 CT Page 2779 (#101), The plaintiffs, Rand Construction, Inc. (Rand Construction) and Wayne Rand (Rand), its president, allege that they are involved in the construction of commercial and residential real estate in Connecticut. Their complaint sets forth eleven counts, against eleven individual defendants[1], all claiming defamation, based on a letter, dated December 25, 2000, signed by the defendants, to Charles Berger, Jr., Director of Inland Water Resources Division for the State of Connecticut Department of Environmental Protection (DEP) (the defendants' letter). A copy of the defendants' letter was submitted by the defendants with their motion, as Exhibit A.
In particular, the plaintiffs allege that the defendants' letter defames them by claiming that the plaintiffs did not have a permit to put eroded materials in a wetland and acted in violation of a permit. (See Amended Complaint, count one, ¶ 5). The defendants' letter, at page 2, refers to "Valli Estates Subdivision, Rand Construction, Smith Street" (in East Hampton, Connecticut) and states, in pertinent part, "[s]ince Mr. Rand did not have a permit to put eroded material in the wetland and pond, he was in violation of the IWWCA[2] regulations. Also, erosion controls specified in the plans were not in place. This is a violation of his permit." Further, the letter questions why the town's wetlands enforcement officer and the IWWCA did not take corrective action. (See Exhibit A, page 3.)
In addition, the plaintiffs assert that the defendants' letter defames them by stating that they "pushed soil and rocks into a separate and distinct watercourse located near Route 16 and 66 in East Hampton, Connecticut, which required remediation by the town public work crews." (See Amended Complaint, count one, ¶ 6.) The defendants' letter, Exhibit A, at page 6, refers to "Global Land Development, Rand Construction, Route 16 and 66." In pertinent part, it states, "[There is a c]onstruction of a self-storage garage complex at the junction of Route 66 and 16. It is also is apparently used as a soil/gravel screening operation site by Mr. Rand, the applicant. Grading of the site pushed soil and rocks into the watercourse that is along the boundary to state property near the road. Silt fences were not installed in the area near the screening operation. This was brought up at IWWCA meetings several times by members. One member reported that silt was traveling down the roadside drainage way far from the project site and was cleaned up by town public works crews. The IWWCA took no action. "
The plaintiffs contend that these statements were false and injured them in their respective profession and calling. (See Amended Complaint, count one, ¶ 7.) They also allege that they demanded, in writing, retraction of the alleged libel, but that it was not retracted within a reasonable time. (See Amended Complaint, count one, ¶ 8) As a CT Page 2780 result, the plaintiffs claim injury to Rand Construction's reputation and that Rand has suffered injury to his reputation, as well as humiliation and mental suffering. (See Amended Complaint, count one, ¶¶ 9-10.)[3]
In response to the plaintiffs' amended complaint, the defendants have pleaded two special defenses upon which they rely in their motion. In their third defense, they assert that the statements made in their letter, by which they claim they intended to initiate administrative investigation and enforcement action by the DEP against the Town of East Hampton, are absolutely privileged. They allege that the "conduct complained of [in Exhibit A] and the remedy sought were properly within the purview and powers of the [DEP]." (See Third Defense, ¶ 2.)
In addition, in their second defense, the defendants assert that their complaint to the DEP falls within the Noerr-Pennington doctrine. As such, the defendants contend that their letter constitutes petitioning activity protected by the First Amendment of the U.S. Constitution and by the Constitution of the State of Connecticut. Since, as set forth below, the court concludes that the defendants are entitled to judgment on the basis that the statements made to the DEP in their letter are absolutely privileged, it need not reach their contentions concerning the Noerr-Pennington doctrine.
In support of their motion, in addition to their letter, the defendants submit their own affidavits, which detail their involvement in wetlands and zoning enforcement issues in the Town of East Hampton. (See Exhibit B to the motion.) They also present other correspondence relating to wetlands issues in the Town (Exhibits C, D, E, and F), and a DEP Inland Water Resources Division Complaint Inspection Form (Exhibit G).
In opposition to the motion and in order to support their position that the statements made about them in the defendants' letter were untrue, the plaintiffs submit Rand's affidavit. Referring to Valli Estates, he states that he obtained subdivision approval for its development in 1994, and that Valli Drive was the last road within the subdivision on which houses were constructed. He avers that Rand Construction obtained all necessary permits to construct Valli Drive and that construction thereof was done with appropriate soil erosion controls. (See Rand affidavit, ¶ 6.). According to him, the Town of East Hampton accepted Valli Drive as a town road in December, 1998 and, thereafter, its maintenance and any wetlands protection issues then became the Town's responsibility. (See Rand affidavit, ¶ 6.) Further, he states that Rand Construction sold almost all of its lots on Valli Drive in 1998 and the last was sold in early 2000; thus, the builders or homeowners of those lots became responsible for erosion control of their respective properties after taking title. (See Rand affidavit, ¶ 6.) He notes that "[s]ince May CT Page 2781 of 2000, neither Rand Construction, Inc. nor I have had any interest in any of the property along Valli Drive that is referenced in the Letter, or any legal responsibility for erosion control in regard to the same." (See Rand affidavit, ¶ 6.)
Concerning the Global Land Development site, Rand asserts that neither he nor Rand Construction own it. (See Rand affidavit, ¶ 7.) He acknowledges that he did have a permit to work in the brook which bordered the site, but that "[a]ll appropriate erosion and sedimentation controls were in place there . . . and regular inspections of my activities were conducted by East Hampton town staff" (See Rand affidavit, ¶ 7.)
In the balance of his affidavit, Rand details his various contacts over the years with several of the named defendants, which largely stem from their opposition to his efforts to develop property and his service on the East Hampton Planning and Zoning Commission and on the East Hampton town council. Therein, Rand contends that several of the defendants bear malice towards him. Rand's affidavit is accompanied by exhibits, including a diagram of Valli Estates (Exhibit A),[4] a list of lots in the Valli Estates Subdivision containing dates of sale (Exhibit B), and a letter to the Town's Planning and Zoning Commission from defendant Minnick (Exhibit C).
The court heard oral argument concerning the motion on January 22, 2002. Additional facts are discussed below.
 II. STANDARD OF REVIEW
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact."H.O.R.S.E. of Connecticut, Inc. v. Town of Washington, 258 Conn. 553,559, 783 A.2d 993 (2001). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 560. "[T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."New Haven Savings Bank v. LaPlace, 66 Conn. App. 1, 6, 783 A.2d 1174, CT Page 2782 cert. denied, 258 Conn. 942, ___ A.2d ___ (2001).
"The test is whether a party would be entitled to a directed verdict on the same facts." Gordon v. Glass, 66 Conn. App. 852, 854, ___ A.2d ___
(2001). "Summary judgment is appropriate only if a fair and reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Internal quotation marks omitted.)Morascini v. Commissioner of Public Safety, 236 Conn. 781, 808-09,675 A.2d 1340 (1996).
 III. DISCUSSION A. Amended Complaint
The plaintiffs argue, in their memorandum, p. 6 (hereafter "plffs' memo."), that the defendants' motion is procedurally defective because it seeks judgment on the original complaint, which was superseded by the amended complaint. In their memorandum, p. 2, the defendants note that the amended complaint was filed. The amended complaint simply adds, in the prayer for relief, a request for an award of punitive damages.
There is no doubt that the plaintiffs have had adequate notice that the motion is addressed to the operative complaint. Under such circumstances, it is appropriate for the court to consider the motion on its merits. See Morris v. Hartford Courant Co., 200 Conn. 676, 683 n. 6,513 A.2d 66 (1986); Spears v. Garcia, 66 Conn. App. 669, 676,___ A.2d ___ (2001) (citation in memorandum of law "sufficiently apprised" opponents of contention on summary judgment motion). In contrast to P.B. § 10-41, which requires a movant on a motion to strike to "distinctly specify the reason or reasons for each such claimed insufficiency" in the motion itself, the rules concerning summary judgment do not so provide. See P.B. §§ 17-44 et seq.
 B. Privilege
"Whether a defamatory communication implicates an interest worthy of protection is a question of law for the trial court to determine, but whether the privilege is nevertheless defeated through its abuse is a question of fact to be decided by the jury." Bleich v. Ortiz,
CT Page 2783196 Conn. 498, 501, 493 A.2d 236 (1985). Here, no allegation is made that such a privilege was abused in some way; rather, the plaintiffs argue that the privilege is not applicable. In addition, in their memorandum, at page 9, the plaintiffs acknowledge that the issue as to whether the statements made in the defendants' letter are absolutely privileged presents a question of law.
Under Connecticut law, in judicial or quasi-judicial proceedings, an absolute privilege attaches to statements which relate to the proceedings, even if they are defamatory. "It has long been established that there is an absolute privilege for statements made in judicial proceedings. . . . There is a long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks and citations omitted.) Petyan v. Ellis, 200 Conn. 243,245-246, 510 A.2d 1337 (1986).
The reasoning which underpins the privilege was also explained inMagnan v. Anaconda Industries, Inc, 37 Conn. Sup. 38, 43, 429 A.2d 492
(1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984), cited with approval in Petyan v. Ellis, supra, 200 Conn. 247: "From earliest times, this state has recognized that the absolute privilege is to be extended for the protection of those participating in judicial proceedings and extends to judges, counsel mid witnesses. The privilege is . . . founded on public policy, which requires that a judge in dealing with the matter before him, a party in preparing or resisting a legal proceeding, and a witness in giving evidence in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel." (Citations omitted; internal quotation marks omitted.)
The privilege applies in proceedings which are quasi-judicial in nature. The privilege "extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character. . . . This privilege extends to every step of the proceeding until final disposition. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative CT Page 2784 proceedings which are quasi-judicial in nature." (Citations omitted; internal quotation marks omitted.) Petyan v. Ellis, supra, 200 Conn. 246.
Thus, the court must determine: (1) whether the proceeding is quasi-judicial in nature and (2) whether the communication at issue is a step in the proceeding. Our Supreme Court has discussed factors to be considered by the court in ascertaining whether the particular proceedings at issue are quasi-judicial in nature. In Kelley v. Bonney,221 Conn. 549, 567, 606 A.2d 693 (1992), it listed the following: "whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . Further, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." (Citation omitted.)
The plaintiffs advance several reasons why they contend the defendants here are not entitled to absolute immunity. First, they assert that in each case relied on by the defendants, the defamed party was the target of the administrative proceeding. (See plffs. memo, p. 13.) The plaintiffs contrast the situation at bar with those in which the privilege was found to be operative by stating, "the defendants' letter was directed to the state DEP, but the DEP has no jurisdiction over theplaintiffs' conduct in regard to inland wetlands because wetlands regulation in East Hampton is a municipal function," citing General Statutes § 22a-42 (a).[5] (Emphasis in original. See plffs. memo., p. 13.) They point out that, pursuant to General Statutes § 22a-42
(c)[6], the Town of East Hampton has an inland wetlands agency which regulates wetlands activity. They contend that the DEP has no authority to regulate their wetland activities and provides no procedural opportunity for them to clear their names. (See id., pp. 13-14.)
The plaintiffs assert that "[w]hile the State DEP does have limited supervisory power to `revoke the authority of a municipality to regulate inland wetlands'; General Statutes 22a-42d (a);[7] that power over the Town of East Hampton should not give the defendants license, under the guise of an `absolute privilege,' to publish defamatory statements regarding the plaintiffs, who are not (and cannot be) proper targets of DEP regulatory activity." (See plffs. memo., p. 14.)
Our legislature has provided for state regulation of local wetlands activity in situations where a municipality fails to perform its duties over a period of time. As noted, § 22a-42d (a) provides for the CT Page 2785 commissioner of environmental protection to revoke a municipality's wetlands authority under such circumstances. See Mimms v. Planning andZoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 289405 (June 11, 1993, Levin, J.). In such an event, the statute provides, in pertinent part, that "[t]he commissioner shall have jurisdiction over the inland wetlands in any municipality whose authority to regulate such inland wetlands has been revoked."
Thus, under Connecticut law, while it is true that, initially, it is the municipality which is looked to in order to regulate wetlands activity, the municipality is not a citizen's final resort on such matters. In the event of municipal failure, Connecticut citizens may look to their state government to act. Under such circumstances, if the commissioner were to revoke the Town of East Hampton's regulatory authority, those who engage in wetlands activity there, such as the plaintiffs, would be directly subject to the commissioner's jurisdiction. Thus, it is incorrect for the plaintiffs to say that they cannot be proper targets of DEP regulatory activity.
A review of the defendants' letter, Exhibit A, indicates that the stated purpose of its signers was to bring to DEP's attention what the defendants believed were consistent failures by the Town to perform its duties in enforcing the laws concerning wetlands activities. The first paragraph states, "[w]e the undersigned submit a formal complaint to the DEP concerning the apparent inability of the town of East Hampton to adequately deal with inland wetland enforcement issues. We believe the historic pattern of lax or no enforcement of obvious violations of town Inland Wetlands and Watercourse Agency (IWWCA) regulations and state wetlands statutes has led to irretrievable degradation of East Hampton's wetlands resources." (See Exhibit A, p. 1.) Further, the defendants' letter states that the claimed "pattern of lax enforcement goes back over a decade. . . ." Id. The letter then goes on to describe what its authors characterize as "recent and current wetland enforcement issues. . . ." Id. Besides the two involving the plaintiffs, which are discussed above as referenced in Rand's affidavit, the defendants' letter describes five other projects, apparently not involving the plaintiffs, about which the defendants are concerned. (See Exhibit A.)
At the end of their letter, the defendants request the DEP to take action. They ask the DEP to "step in and direct [the Town's wetlands enforcement officer (WEO)] and the IWWCA to address the open violation issues in a decisive and timely manner." (See Exhibit A, p. 7.) Various suggestions are made for ensuring that the IWWCA and the WEO take appropriate steps to deal with wetland violations. See id.
Thus, on its face, the letter seeks redress from the DEP as a result of CT Page 2786 claimed failures by the Town and its wetlands officials to enforce the laws. General Statute § 22a-42d contemplates that concerned citizens may seek relief from the DEP where a Town consistently fails to perform, over a period of time. The statute does not provide that DEP action may only result from investigation which the DEP itself initiates, nor could it. It is a fundamental tenet of our system of government that citizens may petition their government for redress of grievances.[8]
Also, § 22a-42d must be seen in the context of the comprehensive system of wetlands oversight which our legislature has established and in which the commissioner plays a pivotal role. For example, among the commissioner's duties is to exercise general supervision of the administration and enforcement of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 to 22a-45, inclusive (the Act). See General Statutes §§ 22a-37; 22a-39 (a). As part of the commissioner's duties, he or she is empowered to conduct investigations related to the purposes of the Act. See General Statute § 22a-39 (d). Likewise, the commissioner is empowered to exercise all incidental powers necessary to carry out the purposes of the Act. See General Statutes § 22a-39
(j). General Statutes § 22a-39 (m) requires the commissioner to adopt regulations (in accordance with Chapter 54, the Uniform Administrative Procedure Act) "establishing reporting requirements for inland wetlands agencies, which shall include provisions for reports to the commissioner on permits, orders and other actions of such agencies and development of a form for such reports. . . ." Accordingly, the court is unpersuaded by the plaintiffs' assertion that the DEP has no jurisdiction over the plaintiffs' conduct in regard to inland wetlands.
As the plaintiffs point out, plffs. memo., p. 15-16, the DEP has promulgated regulations concerning the revocation and reinstatement of municipal authority to regulate inland wetlands. Regs., Conn. State Agencies § 22a-42d-1 (attached as Exhibit K to the defendants' motion papers). Those regulations provide, in subsection (c), that the Commissioner may issue an advisory letter to any inland wetland agency informing it of any complaint received by the DEP or any investigation planned or made by the DEP. The purpose of the subsection "is to foster expeditious correction of administrative or procedural problems and to avoid, where possible, the initiation of formal revocation proceedings." Regs., Conn. State Agencies § 22a-42d-1 (c).
Without citation to authority, the plaintiffs claim that this expression of a policy of attempting to avoid formal proceedings where possible takes this area of administrative oversight out of the quasi-judicial category. (See plffs. memo., p. 16.) The court is unpersuaded by this contention. Encouragement of an informal resolution may be a part of a quasi-judicial process. For example, General Statutes CT Page 2787 § 46a-54 (9) empowers the Connecticut Commission on Human Rights and Opportunities (CHRO), among other duties, to hold hearings relating to any matter under investigation. The related regulations provide that a complaint to the CHRO may be disposed of by conciliation at various stages of the proceedings. See Regs., Conn. State Agencies § 46a-54-81.[9] "[P]roceedings pursuant to General Statutes Sec. 46a-54
are quasijudicial in nature." Digregorio v. Simko, Superior Court, judicial district of Danbury, Docket No. 312922 (March 15, 1994,Moraghan, J.).
In the event that the Commissioner determines that revocation proceedings are necessary, a public hearing is required by General Statute § 22a-42d and by regulations of Connecticut state agencies §22a-42d-1 (d)(1). In addition, a right to appeal to the superior court, in accordance with General Statutes § 4-183, is provided to any municipality aggrieved by the decision of the commissioner under §22a-42d. As noted by the plaintiffs, plffs. memo., p. 16, the regulation provides that the public hearing and the decision to revoke or not by the Commissioner are to be undertaken in accordance with "section 22a-3a-1
(e) of the Regulations of Connecticut State Agencies." Regs., Conn. State Agencies § 22a-42d-1 (d)(5). Section 22a-3a-1 became effective on December 29, 1988, and was repealed; the DEP adopted new rules of practice on June 19, 1992. See Regs., Conn. State Agencies §§ 22a-3a-2
through 22a-3a-6.[10]
In the event of an investigative hearing, which the commissioner may hold for the purposes of investigating actual or potential noncompliance with any statute, regulation, license or order administered by the commissioner, the DEP's hearing officer has the power to "exclude evidence . . ., administer oaths . . ., take testimony, and subpoena witnesses and evidence." Regs., Conn. State Agencies § 22a-3a-2 (1) (2). The Rules of Practice set forth in § 22a-3a-2 govern such proceedings, except that other DEP regulations which are more stringent and those imposing additional requirements are also applicable. See Regs., Conn. State Agencies § 22a-3a-2 (b)(1).
For example, in contested cases, as the plaintiffs note, all the usual judicial formalities apply, such as oaths or affirmations, subpoenaing of witnesses and evidence, examining witnesses, ruling on evidence, imposing sanctions, and issuing decisions. See Regs., Conn. State Agencies §22a-3a-6 (d). If a witness committed perjury in testifying at a hearing, criminal prosecution could ensue. See State v. Kimber, 48 Conn. App. 234,241-243, 709 A.2d 570, cert. denied, 245 Conn. 902, 719 A.2d 1164 (1998) (concerning testimony at an investigatory hearing at the department of consumer protection). CT Page 2788
Under the later-adopted regulations, in the event of a hearing, the plaintiffs would have the opportunity to be granted the status of intervening parties, as provided in § 22a-3a-6 (k) of the regulations of Connecticut state agencies.[11] As intervenors, they could offer evidence, such as that presented in Rand's affidavit.
Under the circumstances, applying the factors utilized by our Supreme Court, in Kelley v. Bonney, supra, 221 Conn. 567, the court finds that the proceedings at issue are quasi-judicial in nature. The applicable statutes and regulations vest the commissioner with the responsibility to exercise judgment and discretion concerning whether or not a municipality has fulfilled its obligations to comply with state law in regulating wetlands activity. As part of the exercise of that responsibility, in the context of revocation of municipal authority, the commissioner is charged with the duty to hear and determine facts or to ascertain facts and decide. At the requisite hearing concerning revocation, witnesses would be examined and the issues would be heard. As a result, the commissioner may make a binding decision to revoke, by which he or she would then assume the municipality's duties and become directly responsible for wetlands oversight therein. That decision, by statute, is subject to an appeal to the superior court under the Uniform Administrative Procedures Act. In the course of making such a determination, and subsequently in stepping into the shoes of the municipality, the commissioner would have the power to affect the personal and property rights of those who engage in wetlands activity.
There can be no question that there is a sound public policy reason here for permitting the freedom of expression which the granting of absolute immunity provides. "The legislature has expressed a strong public policy in favor of protecting and preserving the natural resources, and particularly the wetlands, of this state. `The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and watercourses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. . . . The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state.' General Statutes § 22a-36." Commissioner of Environmental Protection v.Connecticut Building Wrecking Co., Inc., 227 Conn. 175, 198-199,629 A.2d 1116 (1993). CT Page 2789
Our Supreme Court has termed § 22a-36 an "emphatic statement of the importance of protecting wetlands. . . ." See id., 199. It provides a sound public policy basis for affording the individual defendants absolute immunity concerning their letter, which voiced their concerns to the DEP about wetlands activity and law enforcement in East Hampton.
The plaintiffs argue also that the absolute privilege should not apply because, if it is applicable, the plaintiffs would not have available to them any opportunity for "name-clearing" before the DEP or a remedy for being the victims of untruths, including the remedy of a claim for vexatious suit, citing DeLaurentis v. New Haven, 220 Conn. 225, 264-265,597 A.2d 807 (1991). (See plffs. memo., pp. 11, n. 2; 13; 14; 18.) InDeLaurentis v. New Haven, supra, 220 Conn. 264, the court noted that "[w]hile no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements." (Footnote omitted.) Also, the court stated, "[p]arties and their counsel who behave outrageously are subject to civil liability for vexatious suit or abuse of process." Id. Nevertheless, in the subsequent case of Kelley v. Bonney, supra,221 Conn. 549, the court found that the absolute privilege extended to a letter written by an individual and to her oral communication with a potential supporter, because they were part of the process of initiating and preparing for a proceeding. The facts there are instructive, since they contain some similarities to the case at bar.
In that case, Kelley, a public school teacher, initiated an action for defamation and intentional infliction of emotional distress against several defendants, among them being Bonney, who had been a neighbor of one of his students. Id., 552. His claims were brought against each individual defendant "as a result of statements made about him that allegedly impugned his personal and professional integrity." Id.
Four of the defendants, including defendant Sheets, and not including Bonney, sent a letter and petition to the state board of education concerning Kelley. Id., 554. They requested an investigation into what they characterized as long-standing complaints of misconduct by Kelley. The petitioners stated that they believed that the local board of education had not properly addressed the matter. Id., 555. In response, the commissioner of education notified them that state regulations required that such a petition be submitted under oath. The petitioners thereafter submitted a verified petition and complaint to the state board of education. Id.
Bonney's contribution to this effort was the following: "Bonney drafted a letter to the state board of education that described inappropriate conduct by the plaintiff, and she submitted the letter to Sheets to be CT Page 2790 forwarded to the state along with the verified petition, complaint and other attachments. Additionally, Bonney telephoned Janice Waller, believing that Waller might have information concerning the plaintiffs conduct. Bonney had telephoned Waller to enlist Waller's support for the verified petition and complaint that was to be submitted to the state board of education. During the conversation with Waller, Bonney stated that her paper girl had been `molested or attacked or something' by the plaintiff. Waller testified that she assumed that Bonney's allegations about the plaintiff were of a sexual nature. There was no further evidence offered to indicate that Bonney had communicated, or had attempted to communicate, her paper girl's allegations to any other potential witnesses, or that Bonney published any other defamatory material." Id., 572.
Notwithstanding the fact that Bonney was not a signer of the verified petition and complaint, the Supreme Court found that the absolute privilege applied to her conduct. In the case at bar, only the defendants' letter to the DEP is the subject of the action, as opposed to communication to a third party, such as Waller or Sheets in Kelley v.Bonney. The court stated, "[t]he right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings." (Internal quotation marks omitted.) Id., 574. Accordingly, the court found that Bonney's submission of her written complaint, her letter, to Sheets, was absolutely privileged. Id. Thus, the applicability of the absolute privilege does not depend on a complainant's submission of a verified petition or providing evidence under oath.[12]
Indeed, in Petyan v. Ellis, supra, 200 Conn. 251, the Supreme Court stated, "[t]he common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not under oath, so long as it is pertinent to the controversy."
While the court in DeLaurentis v. New Haven, supra, 220 Conn. 264, noted that an appropriate safeguard against unfounded charges was available to the plaintiff there in the form of a vexatious suit action, the absence of such a remedy was not mentioned as a factor in the court's analysis as to whether Bonney was entitled to absolute immunity. See CT Page 2791Kelley v. Bonney, supra, 221 Conn. 572-574. In addition, its availability was not listed in the factors to be utilized in determining whether the proceedings are quasi-judicial in nature. See id., 566-567.
The lack of availability of a remedy, such as by vexatious suit, is not dispositive. As Judge Pickett stated, "[t]he viability of a democratic government requires that the channels of communication between citizens and their public officials remain open and unimpeded. Were complaints such as this one not absolutely privileged, the possibility of incurring the costs and inconvenience associated with defending suit might well deter citizens with legitimate complaints from filing complaints. . . . This court is not unmindful of the deeply disturbing and demoralizing effect false accusations may have on a [person or business]. No one likes to hear, or have his family and friends hear such allegations. It is regrettable that this holding here will, in some instances, afford an immunity to the evil disposed and malignant slanderer. This court is satisfied, however, that the inhibition of citizens' criticism of those entrusted with their protection is a far worse evil." Bieluch v. Smith,
Superior Court, judicial district of Litchfield, Docket No. 156050 (May 26, 1993, Pickett, J.).
More recently, our Appellate Court also cautioned against the "chilling result" which would ensue in the absence of absolute immunity. Field v.Kearns, 43 Conn. App. 265, 276, 682 A.2d 148, cert. denied, 239 Conn. 942,684 A.2d 711 (1996). Also, as our Appellate Court noted there, those subject to multiple groundless complaints may seek an injunction to enjoin the party from filing further complaints. Id., 277 n. 6, citing InRe Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984).
The plaintiffs assert also that, as a matter of law, DEP's regulatory authority over the Town of East Hampton is quite different from the administrative actions which have been determined to be "quasi-judicial," and, due to those differences, no absolute privilege should be afforded to the defendants. (See plffs. memo., p. 14.)[13] The defendants contend that "it should not be enough that ultimately an informal investigation might possibly end up leading to a formal proceeding." (Emphasis in original.) (See plffs. memo., p. 16.)
Other courts, have noted that the actual commencement of proceedings resulting from a citizen complaint is not required for the statements in the complaint to be immunized. "Nothing in Kelley suggested that the continuing viability of any claim of privilege depended upon the future initiation or prosecution of the proceeding for which they endeavored, by their challenged conduct, to prepare." McKnerney v. Ransone, supra; see also Bieluch v. Smith, supra ("The fact that the letter written by the defendants to the Commissioner of Public Safety did not eventuate in a CT Page 2792 formal hearing before the Commissioner does not preclude the application of the rule of absolute privilege," citing Petyan v. Ellis, supra,200 Conn. 246).[14]
Once having concluded that the proceeding is quasi-judicial in nature, the court must determine whether the submission in question was a "step in that proceeding." Kelley v. Bonney, supra, 221 Conn. 571. The defendants attempt to distinguish this situation from those in which our Supreme Court has found absolute immunity to be applicable by asserting that, in the others, the "offending statement was set forth in a document . . . that was expressly authorized, if not required, to be filed under the governing regulations." (Emphasis in original. See plffs. memo., p. 17.) The plaintiffs assert that the DEP has no formal complaint procedure. The record before the court shows that DEP does have a formal method of responding to complaints.[15] As noted above, as to Kelley, in Kelley v. Bonney, supra, 221 Conn. 554-555, 572, the Supreme Court determined that her statements in her letter were entitled to absolute immunity, even though the Department of Education did require a verified petition, which she did not sign.
Further, § 22a-42d-1 (c) of the regulations of Connecticut state agencies expressly contemplates the receipt of a "complaint," in response to which the commissioner may issue an advisory letter (1) informing the local agency thereof, (2) advising of any investigation made or planned by the Department, (3) requesting information from the agency, or (4) outlining corrective actions to be considered or taken by the agency in order to avoid revocation proceedings. Alternatively, revocation proceedings may be begun. As described above, revocation proceedings require a public hearing, the outcome of which is subject to appeal to the superior court. It is clear that the initial step of receipt of a citizen complaint may trigger DEP action.[16] Thus, the defendants' letter was "a step" in a quasi-judicial proceeding.
As part of this quasi-judicial, and potentially judicial process, the defendants' letter is entitled to absolute immunity. To hold otherwise would have a chilling effect on an individual's right to petition his or her government to investigate matters of important public concern.
 CONCLUSION
There are no material facts in dispute. The defendants are entitled to judgment as a matter of law. For the foregoing reasons, the defendants' motion for summary judgment is granted. It is so ordered.
BY THE COURT ____________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT CT Page 2793