ROSALIE B. ZANONI ET AL. *v.* KAREN R. LYNCH
(AC 22873)

Foti, Dranginis and Flynn, Js.

Argued June 9—officially released September 9, 2003

*Paul Zanoni*, pro se, and *Rosalie B. Zanoni*, pro se, the appellants (plaintiffs).

*Timothy S. Fisher*, with whom were *Allison A. Wood* and, on the brief, *Charles D. Ray*, for the appellee (defendant).

*Opinion*

FOTI, J. An appeal to the Superior Court challenging a decree of the Probate Court for the district of Newington underlies the present appeal. The Probate Court decree authorized the defendant, Karen R. Lynch, to sell certain real property in which the plaintiffs, Rosalie B. Zanoni and Paul Zanoni, claimed to have acquired absolute title. Both plaintiffs now appeal from the judg-

ment of the trial court upholding the Probate Court's decree. The plaintiffs claim (1) that the trial court improperly concluded that the Probate Court was authorized to order the sale of the subject property, (2) that the trial court improperly failed to conclude that Rosalie Zanoni had acquired absolute title to the subject property and (3) that genuine issues of material fact existed that precluded the trial court from rendering summary judgment in the defendant's favor. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history underlie this appeal. Helen A. Benny, who died on August 7, 1989, was the plaintiff Rosalie Zanoni's mother. In her August 31, 1965 will, Benny devised two parcels of real property, one in Wethersfield and one in Old Lyme, to Rosalie Zanoni. That real property was in Benny's estate at the time of her death. On August 25, 1994, Rosalie Zanoni deeded the Old Lyme property to her husband, the plaintiff Paul Zanoni. The plaintiffs reside at the Wethersfield property. Benny's will further directed that all expenses and taxes owed by her estate were to be paid out of the estate's residue. In accordance with Benny's will, the Probate Court appointed Rosalie Zanoni as the executrix of Benny's estate. The Probate Court subsequently removed Rosalie Zanoni as executrix of the estate and appointed Richard Pikor as administrator de bonis non cum testamento annexo (d.b.n.c.t.a.). Pikor later resigned and the defendant was appointed successor administrator d.b.n.c.t.a.

On December 8, 1993, the Probate Court issued a decree determining that Benny's estate faced debts, taxes and testamentary expenses, and that the parcels of real property devised to Rosalie Zanoni were the "only assets of real value in [Benny's] estate." The Probate Court further concluded that it had the authority, under General Statutes § 45a-428 (a), to authorize the

sale of the property, which Benny specifically had devised, to pay the debts and expenses of the estate. The Probate Court stated that "while title to the [specifically devised] realty may be deemed to pass upon death, the title [in the specific devisee] is not absolute since it is subject to the fiduciary's right to sell it to satisfy debts and taxes [of the estate]." The Probate Court ordered that the subject premises devised to Rosalie Zanoni in Benny's will "are subject to the right of the fiduciary to petition the court for their sale to meet the obligations of the estate for taxes, debts and expenses."

On December 27, 1994, the Probate Court issued a subsequent decree at the defendant's request to sell one or both parcels of the subject property to pay the estate's debts. The court found that there was "no liquidity in the estate even to begin to pay expenses in the priority required" and that alternative methods of raising revenue to satisfy the estate's debts, apart from simply selling the subject property, had proven unfeasible. Accordingly, the Probate Court ordered the sale of the Old Lyme property, and authorized the defendant to enter the premises and to take steps to prepare the property for sale.

On January 12, 1995, the plaintiffs, claiming that the Probate Court's order interfered with their quiet enjoyment of the Old Lyme property, appealed to the Superior Court.[1] The plaintiffs sought a determination of title for the subject property, an order vacating the Probate Court's December 27, 1994 decree and permanent injunctions preventing the defendant from either trespassing on or attempting to sell the subject property. The plaintiffs thereafter filed a motion for summary judgment. In support of the motion for summary judgment, Rosalie Zanoni submitted an affidavit in which she averred that she was willing to meet the just obliga-

---

[1] See General Statutes § 45a-186 (a).

tions of the estate. Paul Zanoni also averred in an affidavit that he was willing to "meet the just obligations of the Estate . . . so far as such obligations represent a lien against the real property." The plaintiffs argued that Rosalie Zanoni had absolute title and all the rights and privileges of ownership over the subject property, and that because the plaintiffs had voiced their objection to the sale of such property, the Probate Court could not find that the sale was in the parties' best interest.

The defendant timely filed an objection to the plaintiffs' motion for summary judgment and a cross motion for summary judgment. The defendant claimed, essentially, that Rosalie Zanoni did not have an absolute ownership right in the subject property and that the Probate Court possessed the authority to order such property sold to meet the debts of the estate because the other assets of the estate were insufficient to pay the estate's obligations. On October 30, 1995, the trial court issued a memorandum of decision in which it denied the plaintiffs' motion for summary judgment and granted the defendant's cross motion for summary judgment. The trial court affirmed the Probate Court's order that authorized the sale of the subject property and denied the plaintiffs' claim that Rosalie Zanoni had acquired absolute title to the subject property. The plaintiffs thereafter filed a motion to reargue the motions disposed of by the trial court's decision. The court denied that motion, and the plaintiffs timely appealed to this court.

Before addressing each of the claims raised by the plaintiffs, we first set forth the applicable standard of review that applies to all of the claims. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and other

proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of . . . a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Hernandez* v. *Cirmo*, 67 Conn. App. 565, 567–68, 787 A.2d 657, cert. denied, 259 Conn. 931, 793 A.2d 1084 (2002). Our review of the court's decision to grant the defendant's cross motion for summary judgment is plenary; we must determine whether the court's conclusions were legally and logically correct. See *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001).

I

The plaintiffs first claim that the trial court improperly concluded that the Probate Court was authorized to order the sale of the subject property. We disagree.

The Probate Court, in its December 8, 1993 decree, stated: "[W]hen an estate is deemed solvent because there are assets sufficient to pay expenses and taxes, but the only such asset is real property which has been specifically devised, the court may authorize the sale of such real property after personal notice of the pen-

dency of an application for a decree to authorize such sale has been given to the specific devisee. General Statutes § 45a-428 (a)." The Probate Court, in its December 27, 1994 decree, ordered the sale of the Old Lyme property.

The trial court, relying on General Statutes §§ 45a-428 (a) and 45a-426 (b),[2] concluded that "title to specifically devised real property passes subject to the administration of the estate." The trial court further relied on the Probate Court's findings that "there are outstanding claims against the estate and . . . that there are no real assets other than the specifically devised real property . . . ." The trial court characterized the estate as "insolvent or solvent with no real assets other than the specifically devised real property."

General Statutes § 45a-428 is entitled "Sale or mortgage of real property specifically devised. Procedures for solvent and insolvent estates." Subsection (a) provides: "If the Court of Probate finds that the estate of a deceased person is insolvent and if the real property has been specifically devised or if the court finds that the estate of such person is solvent but that there are no assets of the estate, other than real property specifically devised or forbidden by will to be sold or mortgaged, from which debts, taxes and administration charges against the estate may be paid, the court shall order personal notice of the pendency of the application for a decree authorizing the sale or mortgage of such real

___

[2] General Statutes § 45a-426 (b) provides: "Specific legacies shall not be taken or sold for the payment of debts and charges against the estate of the testator when there is other property, real or personal, sufficient and available therefor and not specifically devised or bequeathed; but real property may be sold in lieu thereof, when it is necessary for such purpose, unless such will otherwise directs."

Although we agree with the plaintiffs that § 45a-426 (b) did not grant authority to the Probate Court to order the sale of the subject premises, we nevertheless conclude that the court properly relied on General Statutes § 45a-428 as a source of authority for the sale.

property to be given to all devisees of such real property whose existence, names and residences can be ascertained by the court and shall order such notice as it deems advisable to be given to all such devisees whose existence, names and residences cannot be ascertained by the court."

The plaintiffs argue that the trial court misinterpreted § 45a-428 as a source of authority for the Probate Court to order the sale of the subject property. They posit that "the statute requires the Probate Court to notify the devisees and to obtain the written consent of the devisees. There is no authority to sell real property to be found in [that] section. If the legislature intended to authorize the Probate Court to order the sale of real property [it] would have included words to that effect."

"Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citation omitted; internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 70 Conn. App. 341, 344–45, 798 A.2d 476 (2002).

The plaintiffs' interpretation of § 45a-428 runs contrary to the statute's plain language. Subsection (a) describes two different scenarios. Under the first are insolvent estates with real property that has been specif-

ically devised. Under the second are solvent estates with no assets from which debts, taxes and administration charges against the estate may be paid other than real property that has either been specifically devised or is forbidden by the terms of a will from being sold or mortgaged. If either of those scenarios exists, the statute grants authority to the Probate Court to "order personal notice of the pendency of the application for a decree authorizing the sale or mortgage of such real property"; General Statutes § 45a-428 (a); to the persons described.

Subsection (b) of § 45a-428 begins with the words "[e]xcept as provided in this section . . . ." Those words logically signal that the legislative enactment that follows applies to scenarios other than those that are described elsewhere in the section, here, those described in subsection (a). By its terms, subsection (b) applies to solvent estates with real property that is either specifically devised or is forbidden by will to be sold or mortgaged. In such scenarios, the Probate Court lacks authority to order the sale of such property "without the written consent of the specific devisees or other parties interested as distributees of such real property or of the guardians ad litem or guardians or conservators of the estates of those not legally competent to so consent." General Statutes § 45a-428 (b).

To the extent that the plaintiffs argue that § 45a-428 required the Probate Court to obtain Rosalie Zanoni's written consent to order a sale of the subject property, the argument lacks merit. That is so because the trial court specifically found that the facts of the present case implicated subsection (a), not subsection (b). That is, this was not a case in which the estate was solvent. Instead, the court found that the estate was either "insolvent or solvent with no real assets other than the specifically devised real property."[3]

---

[3] Likewise, the plaintiffs' claim that the Probate Court lacked the authority to order the sale in contravention of their objection is unfounded. Under

Without citing any authority, the plaintiffs claim that the legislature intended § 45a-428 to serve solely as a notice requirement or to somehow "limit the activity of the Probate Court and protect the rights of legatees and devisees." The plaintiffs likewise argue that the statute does not explicitly grant authority to the Probate Court to order the sale of the subject property. Instead, the statute expressly requires that the Probate Court afford notice to the class of persons affected by its terms.

We recognize that § 45a-428 does not expressly state that the Probate Court possesses the authority to order the sale that necessitates such notice in the first place. Our review of the statute's scant legislative history does not shed light on the issue. It would be entirely irrational, however, for the legislature to have required that the Probate Court afford interested parties personal notice of the pendency of the application for a decree authorizing the sale or mortgage of real property if, in fact, the Probate Court lacked the authority to grant such application and to order such sale or mortgage. Were we to interpret § 45a-428 as the plaintiffs suggest, we would essentially render subsection (a) meaningless. "We ordinarily do not read statutes so as to render parts of them superfluous or meaningless." (Internal quotation marks omitted.) *State v. Reynolds*, 264 Conn. 1, 135, 836 A.2d 224 (2003).

Our interpretation of § 45a-428 is harmonious with other legislative enactments that concern the same subject matter and that refer to the Probate Court's authority, by virtue of § 45a-428, to order the sale or mortgage of real property. For instance, General Statutes § 45a-166 (a) provides in relevant part: "The Court of Probate

General Statutes § 45a-428 (a), the Probate Court needed only to provide notice to the specific devisee of the sale. The statute does not require the Probate Court to obtain the specific devisee's written consent prior to ordering the sale.

*in ordering a sale* under the provisions of sections 45a-164 to 45a-169, inclusive, and 45a-428 shall direct whether the sale shall be public or private. . . ." (Emphasis added.) See also General Statutes § 45a-165 (a), which provides: "When any conservator, guardian, administrator, executor or trustee, who has been authorized under the provisions of sections 45a-164 to 45a-169, inclusive, and 45a-428 to sell or mortgage any real property, has died, resigned or been removed without having sold or mortgaged such real property, the court of probate by which such sale or mortgage was authorized may, upon written application by his duly appointed successor, authorize the sale or mortgage of the real property remaining unsold or unmortgaged upon his giving such probate bond, if any, and upon such further notice, if any, as said court orders."[4]

---

[4] The plaintiffs argue that "[a]uthority to sell specifically devised real property is found in [General Statutes §§ 45a-162 through 45a-169]."

General Statutes § 45a-162, entitled "Sale of choses in action and other property," provides in relevant part: "Before the final settlement of any estate, the Court of Probate may order the sale of the credits and choses in action belonging to such estate, and may at any time order the sale of personal property, and in the case of an insolvent debtor's estate of all or any property, as it finds for the interest of the estate, in a manner and after notice which it judges reasonable. The court, in making orders for the sale of the property described in this section, may order it to be sold at public or private sale at the discretion of the person authorized to make the sale. . . ."

The plaintiffs argue that a Probate Court could use authority granted to it by that enactment only if an insolvent debtor's estate was before it and it found that the sale was in the estate's interest. The plaintiffs contend that neither circumstance exists here.

General Statutes § 45a-164, entitled "Sale or mortgage of real property," provides in relevant part in subsection (a): "Upon the written application of the conservator of the estate of any person, guardian of the estate of any minor, temporary administrator, administrator or trustee appointed by the court, including the trustee of a missing person, or the executor or trustee under any will admitted to probate by the court . . . the court may authorize the sale or mortgage of the whole or any part of . . . any real property in this state of such person, minor, missing person, deceased person or trustee, or of any real property the legal title to which has been acquired by such temporary administrator, administrator, executor or trustee, if the court finds it would be for the best interests of the parties in interest to grant the application."

For those reasons, we conclude that the trial court properly concluded that the Probate Court possessed the authority to order the sale of the subject property.

II

The plaintiffs' next claim is somewhat related to their first claim. The plaintiffs claim that the trial court improperly failed to conclude that Rosalie Zanoni had acquired "absolute title" to the subject property at Benny's death, which title thereby precluded the Probate Court's order to sell the subject property.[5] We disagree.

"It is fundamental jurisprudence that title to real estate vests immediately at death in a deceased's heirs, or in devisees upon the admission of a will to probate. . . . The recording of a probate certificate of devise or descent is necessary only to perfect marketable title. That certificate furnishes evidence that the heir's or devisee's title is no longer in danger of being cut off by a probate sale to pay debts of the estate and also because it furnishes a record of who received the title. Such a probate certificate is not a muniment of title,

The plaintiffs argue that a Probate Court could use authority granted to it by that enactment only if it found that the sale was for the benefit of the sole specific devisee, Rosalie Zanoni. The plaintiffs contend that such a finding was wholly unwarranted.

The plaintiffs' attempt to persuade us that either of those legislative enactments controls the present dispute is unavailing. General Statutes § 45a-428 pertains directly to the subject matter at issue in the present case, specifically devised real property. As such, § 45a-428 governs the court's actions in the present dispute. "When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over other general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) Massad v. Eastern Connecticut Cable Television, Inc., 70 Conn. App. 635, 640, 801 A.2d 813, cert. denied, 261 Conn. 926, 806 A.2d 1060 (2002).

[5] Despite their claim that Rosalie Zanoni acquired "absolute title," the plaintiffs nonetheless posit that the defendant "might appropriate [the] real estate" if (1) Benny was an insolvent debtor, (2) Rosalie Zanoni consented to the sale of the property or (3) the Probate Court found that it was in the best interest of the interested parties.

however, but merely a guide or pointer for clarification of the record. . . . The fiduciary of the decedent's estate does not take title to the real estate . . . and a fiduciary has no right to interfere with the devolution of title unless the property is needed to satisfy claims against the estate." (Citations omitted.) *Cardillo* v. *Cardillo*, 27 Conn. App. 208, 212, 605 A.2d 576 (1992); see also *Foote* v. *Brown*, 81 Conn. 218, 224, 70 A. 699 (1908) (title to specifically devised real property passes immediately at decedent's death and carries with it right of immediate possession); 96 C.J.S. 819, Wills § 1099 (1957) ("[u]nless the will is invalid, the legal title to land devised passes to the devisee directly by the will itself, which operates as a conveyance"); G. Wilhelm, Connecticut Estates Practice, Management of Estates (2002) § 7:45 (legal title to real property vests immediately in devisee).

As previously suggested, the fiduciary of a decedent's estate possesses a limited statutory right to interfere with the passage of title to a devisee. "Upon the death of a testator, the title to the real property devised in his will vests in the devisees, subject to the control of the court and possession of the executor during administration." 31 Am. Jur. 2d 498, Executors and Administrators § 740 (2002). "[U]nder the conditions and for the purposes prescribed by statute, as where the personal property is insufficient to pay the debts of the decedent's estate, his real property and interests therein may be regarded as assets to which his personal representatives may resort." 33 C.J.S. 780, Executors and Administrators § 135 (1998). The Probate Court's authority to order the sale of real property is "special and statutory and the authority must be strictly followed, otherwise the order of sale will be void. . . . [T]he burden is on the proponent, in this case the administrator, to establish in the Probate Court, and in the Superior Court, on appeal, the statutory predicate for

the court's order." (Citations omitted.) *Satti* v. *Rago*, 186 Conn. 360, 365–67, 441 A.2d 615 (1982).

The foregoing authorities leave no doubt as to the fact that although title to specifically devised real property passes to a decedent's devisees at his death, such title is not absolute.[6] As we concluded in part I, § 45a-428 afforded the Probate Court the authority to order the sale of the specifically devised property.

### III

The plaintiffs finally claim that the court improperly granted the defendant's cross motion for summary judgment because a genuine issue existed as to five material facts. We disagree.

Specifically, the plaintiffs argue that the following issues of fact existed: (1) whether Benny's will "directed otherwise" with regard to a stated disposition of the subject property, (2) whether the defendant's affidavit contained conclusory statements concerning the solvency of the estate but no supporting evidence, (3) whether the specific devisee's objections were ignored, (4) whether the sale of the property was in the estate's best interest and (5) whether the sale of the property was in Rosalie Zanoni's best interest. Given the court's proper interpretation of § 45a-428, which we addressed in part I, only the second of those issues was at all

---

[6] The plaintiffs also argue that General Statutes § 45a-368 evidences a legislative intent that title pass absolutely to devisees. That section imposes liability for an estate's expenses, claims, funeral expenses and taxes for which the estate is liable on beneficiaries who have received assets from an estate to the extent that such beneficiaries have received estate assets. The plaintiffs argue that under that statute, "there is no necessity to hold the estate open until all claims are satisfied. A specific devisee can elect to take his inheritance subject to the potential liability [from creditors of the estate]." They further argue that case law predating the enactment of § 45a-368 in 1987, "which left an estate open until all claims had been satisfied or all property exhausted, should be disregarded." We find no merit in the plaintiffs' argument.

material to the court's analysis. Accordingly, we shall limit our inquiry to that issue, namely, whether a genuine issue of material fact existed as to the estate's solvency.

We look to the evidence properly submitted by the parties to determine whether, as the court found, it demonstrated that no genuine issue of material fact existed. In support of her cross motion for summary judgment, the defendant submitted an affidavit. She averred therein that (1) the two parcels of real estate are the only assets of real value in the estate, (2) the total amount of outstanding claims and expenses exceed the value of the estate, and (3) it was necessary to sell the properties to pay the debts and expenses of the estate. The defendant also submitted the decree of the Probate Court dated December 8, 1993, in which the Probate Court found that "the two specifically devised parcels of real estate are the only assets of real value in the estate" and that Rosalie Zanoni "has contributed funds from time to time to pay specific expenses, but those contributions have been voluntary on her part." The defendant also submitted the decree of the Probate Court dated December 27, 1994, in which the Probate Court found that "there is no liquidity in the estate to even begin to pay expenses in the priority required" and "alternative methods of raising cash for the estate, either from contributions from the beneficiaries or by placing a mortgage on one or both of the properties" had not proven to be a possibility.

The plaintiffs, in support of their motion for summary judgment and in opposition to the defendant's cross motion for summary judgment, submitted affidavits to the court. Rosalie Zanoni averred, inter alia, that (1) she was the specific devisee of the subject property, (2) she objected to the sale of the subject property, (3) she was willing to meet the just obligations of the estate and previously had met certain of the estate's obliga-

tions, and (4) that there were outstanding judgments against the estate. Paul Zanoni averred, inter alia, that (1) Rosalie Zanoni had deeded the subject property to him in August, 1994, (2) he had provided $500 to settle a claim against the estate and (3) he was "willing to provide further funds to meet the just obligations of the Estate . . . so far as such obligations represent a lien against the real property."

The court, having reviewed the evidence submitted to it, made note of the plaintiffs' main argument in opposition to the defendant's cross motion for summary judgment, which was that because the plaintiffs were willing to pay the estate's just debts, the estate could not be considered insolvent. The court rejected that argument and concluded that the plaintiffs had failed to demonstrate that a genuine issue of material fact existed as to the estate's solvency. The court determined that on the basis of the evidence before it, "the estate would be considered insolvent or solvent with no real assets other than the specifically devised property."

Having reviewed the evidence presented to the court, we likewise conclude that the defendant demonstrated that no issue of material fact existed. In opposing a motion for summary judgment, "the opposing party must substantiate its adverse claim with evidence disclosing the existence of [an issue of material fact]." (Internal quotation marks omitted.) *Hernandez* v. *Cirmo*, supra, 67 Conn. App. 567. The plaintiffs did not do so. Instead, they argued that the Rosalie Zanoni, as the specific devisee, had absolute title to the estate and that "all the claims against the estate are contrivances which have been fabricated to satisfy an obsession to deprive the devisee of her inheritance." The plaintiffs also argued that because Rosalie Zanoni already owned the subject property, she would be precluded from purchasing the property in a sale because "the result would be an unnecessary circulation of money." The plaintiffs

submitted to the court, in addition to their affidavits, Benny's will, Benny's certificate of death, Paul Zanoni's quitclaim deed to the Old Saybrook property and the Probate Court's December 27, 1994 decree. The plaintiffs did not refute the facts set forth in the defendant's affidavit or in the decrees of the Probate Court. The plaintiffs acknowledged the fact that the estate had creditors and offered to pay the estate's debts. They did not, however, refute the facts central to the defendant's case, which were that the estate had outstanding claims and that the only assets of real value in the estate were the parcels of real property.

For all of those reasons, we conclude that the court properly concluded that no genuine issue of material fact existed as to the estate's solvency for purposes of § 45a-428, the statute that the court properly applied to the facts of this case.

The judgment is affirmed.

In this opinion the other judges concurred.