PAUL ZANONI ET AL. *v.* KAREN R. LYNCH

ROSALIE B. ZANONI ET AL. *v.* KAREN R. LYNCH

ROSALIE B. ZANONI ET AL. *v.* KEITH B. GALLANT ET AL.
(AC 22858)

Foti, Dranginis and Flynn, Js.

Argued June 9—officially released September 9, 2003

*Paul Zanoni,* pro se, and *Rosalie B. Zanoni,* pro se, the appellants (plaintiffs).

*Timothy S. Fisher,* with whom were *Allison A. Wood* and, on the brief, *Charles D. Ray,* for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiffs, Paul Zanoni and Rosalie B. Zanoni, appeal from the trial court's rendering of summary judgments in favor of the defendant or the defendants, as the case may be, in ten separate appeals from the Probate Court for the district of Newington. The plaintiffs also appeal, with regard to one of the ten appeals, from the court's denial of their motion for summary judgment. We will address the separate issues raised with regard to the appeals in turn. We affirm the judgments of the trial court.

All ten of the plaintiffs' appeals to the Superior Court concern the disposition of two parcels of real property, one in Old Lyme and the other in Wethersfield, which had been specifically devised to Rosalie Zanoni by her mother, Helen A. Benny. Benny died on August 7, 1989. Rosalie Zanoni subsequently transferred her interest in the Old Lyme property to her husband, Paul Zanoni.

Originally, Rosalie Zanoni was the executrix of Benny's estate. The Probate Court subsequently removed her as executrix of the estate and appointed Richard Pikor as administrator de bonis non cum testamento

annexo (d.b.n.c.t.a.). After Pikor resigned from that position, the Probate Court appointed the defendant, Karen R. Lynch, as successor administrator d.b.n.c.t.a. The Probate Court later appointed the defendant, Keith B. Gallant, as successor administrator d.b.n.c.t.a.

Other related matters are germane to the present appeal. On December 8, 1993, the Probate Court issued a decree determining that it possessed authority, under General Statutes § 45a-428 (a), to authorize the sale of the properties that Benny had specifically devised to Rosalie Zanoni to pay the debts and expenses of the estate. The Probate Court determined that the properties constituted the only assets of real value in Benny's estate and that they were subject to the administrator's right to petition the Probate Court for their sale to meet the estate's obligations. Lynch subsequently petitioned the Probate Court for a decree to sell one or both parcels of real property. On December 27, 1994, the Probate Court ordered Lynch to sell the Old Lyme property and authorized Lynch to take steps to effectuate its order. The court later ordered the sale of the Wethersfield property as well.

The plaintiffs appealed to the Superior Court from the Probate Court's decision.[1] They claimed that the order interfered with their quiet enjoyment of the property and sought a determination of title for the property, an order vacating the Probate Court's decree and permanent injunctive relief preventing Lynch from attempting to sell the property. The Superior Court subsequently granted the motion for summary judgment filed by Lynch and denied the motion for summary judgment filed by the plaintiffs. The court rejected the plaintiffs' argument that Rosalie Zanoni had acquired

[1] See General Statutes § 45a-186 (a), which, unless otherwise specifically provided by law, permits appeals to the Superior Court from "any order, denial or decree of a court of probate in any matter . . . ."

"absolute title" to the subject property and concluded that the Probate Court, given its findings, had the authority to order the sale of the property under § 45a-428. *Zanoni* v. *Lynch*, Superior Court, judicial district of Hartford, Docket No. 95-0546174 (October 30, 1995). To a large extent, the preclusive effect of the Superior Court's decision in that appeal, which this court affirmed in *Zanoni* v. *Lynch*, 79 Conn. App. 309, 830 A.2d 304 (2003), warrants the outcome we reach today.

In another prior matter that is germane to the present appeals, Rosalie Zanoni brought an action against Paul A. Hudon, who had been the conservator of Benny's estate from February, 1989, until her death on August 7, 1989. In June, 1989, Rosalie Zanoni and Hudon, in his capacity as conservator of Benny's estate, entered into a sales and purchase agreement for the Old Lyme property. Rosalie Zanoni paid Hudon $16,500, but, contrary to the terms of the agreement, did not pay Hudon the balance of the purchase price on the closing date or at any time prior to Benny's death. When Hudon filed his final account with the Probate Court in September, 1989, he listed the $16,500 as an asset of the estate. In November, 1989, the Probate Court approved Hudon's final account, and Hudon transferred the $16,500 to the fiduciary of Benny's estate.[2] Rosalie Zanoni thereafter brought an action against Hudon, both individually and in his capacity as conservator of Benny's estate, seeking damages for unjust enrichment, conversion and breach of contract, as well as for declaratory relief. Rosalie Zanoni claimed that she was entitled to the $16,500 that she had paid to Hudon as conservator in her failed attempt to purchase the Old Lyme property. The court concluded that the Probate Court properly concluded that the disputed $16,500 was part of the estate's funds. The court also concluded that Hudon had acted prop-

[2] Rosalie Zanoni appealed to the Superior Court from the Probate Court's approval of the final account, but the court later dismissed the appeal.

erly with regard to the funds. *Zanoni* v. *Hudon*, Superior Court, judicial district of Hartford, Docket No. 91-0391234 (August 25, 1994). This court affirmed the Superior Court's judgment in *Zanoni* v. *Hudon*, 48 Conn. App. 32, 708 A.2d 222, cert. denied, 244 Conn. 928, 711 A.2d 730 (1998). In September, 1996, the Probate Court declared Benny's estate to be insolvent, a decision from which the plaintiffs did not appeal.

The plaintiffs filed ten separate appeals in the Superior Court, all of which challenged the Probate Court's decrees concerning the subject properties. Five of those appeals are related to the Probate Court's decrees authorizing the administrator to sell the subject properties.[3] The other five appeals challenged Probate Court decrees ordering the administrator to pay homeowner's

---

[3] The five appeals related to the sale of the property are: (1) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 94-0076985 (January 17, 2002). The plaintiffs, in that appeal, challenged the Probate Court's December 8, 1993 decree in which the Probate Court reasoned that it possessed the authority to order the sale of the subject property to meet the estate's obligations.

(2) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 94-0076994 (January 17, 2002). The plaintiffs, in that appeal, challenged the Probate Court's January 11, 1994 decree that (1) authorized and directed the defendant to sell both the Old Lyme and Wethersfield properties, and (2) ordered the plaintiffs to cooperate with the defendant in her attempt to sell the properties and to grant the defendant access to the properties.

(3) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 95-0077000 (January 17, 2002). The plaintiffs, in that appeal, challenged the Probate Court's May 23, 1995 decree that approved a contract for the sale of the Old Lyme property and that authorized certain expenditures for the sale.

(4) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 97-0077240 (January 17, 2002). The plaintiffs, in that appeal, challenged the Probate Court's July 14, 1997 decree that ordered the defendant to sell both parcels of land by public auction and to procure liability insurance for both properties.

(5) *Zanoni* v. *Gallant*, Superior Court, judicial district of Tolland, Docket No. 98-0076746 (January 17, 2002). The plaintiffs, in that appeal, challenged the Probate Court's September 21, 1998 order that again authorized the defendant fiduciary to sell both real properties in accordance with its decree of July 14, 1997.

insurance premiums for the subject properties from certain estate assets.[4] In 2001, the court consolidated the plaintiffs' related pending appeals, including the ten appeals that underlie this appeal, and transferred the appeals from the judicial district of Hartford to the complex litigation docket of the Superior Court in the judicial district of Tolland. The defendants thereafter filed motions for summary judgment in all ten appeals.

With regard to the appeals that challenged the decrees related to the sale of the properties, the defendants claimed that the doctrine of res judicata applied and barred the appeals. Specifically, the defendants claimed that the parties already had litigated fairly and fully in a prior appeal the issue of whether the Probate Court possessed the authority to order the sale of the properties under the circumstances of this case. The

---

[4] The five appeals related to the payment of insurance premiums on the subject property are: (1) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 94-0076997 (February 15, 2002). The plaintiffs, in that appeal, challenged the Probate Court's March 25, 1994 decree authorizing the defendant to use estate assets to pay homeowners' insurance premiums for the subject properties.

(2) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 95-0076998 (February 15, 2002). The plaintiffs, in that appeal, challenged the Probate Court's March 27, 1995 decree authorizing the defendant to use estate assets to pay homeowners' insurance premiums for the subject properties.

(3) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 96-0077004 (February 15, 2002). The plaintiffs, in that appeal, challenged the Probate Court's March 18, 1996 decree authorizing the defendant to use estate assets to pay homeowners' insurance premiums for the subject properties.

(4) *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 97-0076995 (February 15, 2002). The plaintiffs, in that appeal, challenged the Probate Court's March 20, 1997 decree authorizing the defendant to use estate assets to pay homeowners' insurance premiums for the subject properties.

(5) *Zanoni* v. *Gallant*, Superior Court, judicial district of Tolland, Docket No. 98-0076999 (February 15, 2002). The plaintiffs, in that appeal, challenged the Probate Court's March 3, 1998 decree authorizing the defendant to use estate assets to pay homeowners' insurance premiums for the subject properties.

defendants argued that because the prior court in that previous appeal already had resolved the issue adversely to the plaintiffs, that judgment precluded the plaintiffs' attempts to relitigate the issue.

With regard to the appeals that challenged the decrees related to the payment of insurance premiums, the defendants likewise claimed that the doctrine of res judicata applied and barred the appeals. Specifically, the defendants claimed that the court's prior judgments adverse to the plaintiffs as to the administrator's right to sell the properties and the disposition of the $16,500 paid to Hudon barred those appeals related to the propriety of orders to the administrator to pay homeowners' insurance premiums for the properties.

The court issued two separate memoranda of decision rendering summary judgments in favor of the defendant administrators in all ten cases. The court also denied the plaintiffs' motions for summary judgment in the five appeals related to the payment of insurance premiums. One memorandum, filed January 17, 2002, concerned the five appeals related to the sale of the property. Another memorandum, filed February 15, 2002, concerned the five appeals related to the payment of insurance premiums. The court concluded in those decisions that prior actions, in which the court held that the Probate Court properly had authorized the sale of the properties and in which the court held that disputed estate assets were properly part of Benny's estate, collaterally estopped the plaintiffs from prevailing in the ten present appeals. The present appeals to this court followed.

The plaintiffs raise several claims on appeal. First, the plaintiffs claim that with regard to the court's denial of their motion for summary judgment in one of their appeals from the Probate Court, *Zanoni* v. *Lynch*, Superior Court, judicial district of Tolland, Docket No. 94-

0076985 (January 17, 2002), the court improperly (1) concluded that Rosalie Zanoni did not acquire absolute title to the properties specifically devised to her in Benny's will, and (2) failed to conclude that it was the fiduciary's duty to obtain and to record a certificate as described in General Statutes § 45a-450.[5] Second, the plaintiffs claim that the court improperly applied the doctrines of res judicata and collateral estoppel in rendering judgment in the defendants' favor in the appeals related to the sale of the properties. Third, in regard to the appeals related to the payment of insurance premiums, the plaintiffs claim that the court improperly (1) concluded that the defendants had an insurable interest in the properties and (2) permitted the defendants to pay expenses of administration from a restricted account containing the $16,500 that the court already had determined, in a prior proceeding, properly was part of the estate's assets. We disagree with all of the plaintiffs' claims and will address each of them in turn. Before doing so, however, we first set forth the standard of review that applies to the plaintiffs' claims.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any mate-

[5] The plaintiffs also claim that we should reverse the court's denial of their motion for summary judgment because the court, in ruling on their motion, improperly ruled that the decision in *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546174, precluded the relief sought by the plaintiffs. The plaintiffs argue that the court, in that "earlier" decision, failed to address the issue of title to the properties and that the court here improperly treated the issue as decided in that prior proceeding. We fail to see how that occurred because the decision at issue in this case, denying the plaintiffs' motion for summary judgment, predated the decision in *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546174, by twelve days. In any event, we will address the issues of res judicata and collateral estoppel, as they relate to the decision in *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546174, in the context of the plaintiffs' other claims.

rial fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

I

We first address the claims related specifically to the court's denial of the plaintiffs' motion for summary judgment in *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 94-0076985.

As a preliminary matter, we will address an issue of reviewability. The defendants cite *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991), and argue that "the denial of a motion for summary judgment is not appealable where the case has been heard on the merits and resolved against the moving party, as this one has." We disagree. In *Gurliacci*, our Supreme Court adopted the rule that "absent exceptional circumstances, a denial of a motion for summary judgment is not appealable *where a full trial on the merits* produces a verdict against the moving party." (Emphasis added; internal quotation marks omitted.) Id. Here, the judgment did not follow a full trial on the merits; it resulted from the court's decision to render summary judgment in the defendants' favor. Under those circumstances, the stated rationale for the rule adopted in *Gurliacci*, which was that a decision based on more evidence should preclude review of a decision based on less evidence, does not apply.

The following limited procedural history provides some context for the present claims. In this particular appeal, the plaintiffs appealed from the Probate Court's

December 8, 1993 decree in which the Probate Court ruled that it possessed the authority to order the sale of the subject property to meet the estate's obligations and that the fiduciary had the right to petition the Probate Court for their sale. In their appeal, the plaintiffs sought an order to preclude the fiduciary from attempting to sell the properties and an order requiring the fiduciary to obtain certificates of devise, as provided in § 45a-450. On September 18, 1995, the court issued a memorandum of decision in which it denied the plaintiffs' motions for summary judgment.

A

We will first address the claim that the court improperly failed to conclude that it was the fiduciary's duty to obtain and to record a certificate of devise as described in § 45a-450.

With regard to the requested relief, the trial court noted that Rosalie Zanoni, in October, 1991, had requested that the Probate Court order the fiduciary to record a certificate of devise. The trial court observed that the Probate Court did not grant the request and that Rosalie Zanoni did not appeal from that denial. The trial court also noted that the decree that formed the basis of the appeal, the Probate Court's December 8, 1993 decree, did not address the issue of whether Rosalie Zanoni was entitled to a certificate of devise, but instead addressed the fiduciary's right to petition the court for the sale of the properties.

We agree with the court that the issue of whether Rosalie Zanoni was entitled to a certificate of devise was not before it. Accordingly, the court properly declined to order the fiduciary to record a certificate of devise.

B

The plaintiffs next claim that the court improperly concluded that Rosalie Zanoni did not acquire absolute

title to the properties specifically devised to her in Benny's will. We disagree.

The plaintiffs requested that the trial court declare the Probate Court's December 8, 1993 decree a nullity and prohibit the fiduciary from attempting to sell the properties. Rosalie Zanoni argued that she was prepared to meet the "just obligations" of the estate and that absolute title had passed to her at Benny's death.

The court rejected Rosalie Zanoni's claim. The court held that title to real property passes " 'subject to the rights of administration' " and that given the circumstances of the estate, § 45a-428 (a) empowered the Probate Court to order the sale of the properties. The court reasoned that the rationale for its ruling was demonstrated by the facts of this case. The court stated: "[Rosalie] Zanoni obligates herself to pay 'just' debts of the estate. The point is that she has serious questions about the propriety of some of the claims. Chaos, however, would reign if specific devisees could take absolute title and creditors had to litigate their claims seriatim in the courts against various parties or, worst of all, in Probate Court where there would be no assets in an estate which has been rendered insolvent because the real estate has absolutely vested in a specific devisee prior to a final accounting."

This court already has held that under the circumstances of this case, the Probate Court properly ordered the fiduciary to sell the specifically devised property. *Zanoni* v. *Lynch*, supra, 79 Conn. App. 320. Accordingly, we agree with the court's ruling and have no need to revisit the issue here.

II

The plaintiffs next claim that the court improperly applied the doctrines of res judicata and collateral estoppel in rendering judgment in the defendants' favor

in the appeals related to the sale of the properties. We disagree.

The trial court aptly characterized the issue before it with regard to the five appeals related to the Probate Court's decrees concerning the sale of the properties. The court stated that "[t]he purported basis of these appeals is identical, [namely] that these parcels were specifically devised to Rosalie Zanoni by Helen Benny in her will and that General Statutes § 45a-428, which permits the Probate Court to order the sale of such real property if the estate is insolvent, is inapplicable." The court thereafter noted that the issue raised in these appeals already had been resolved in *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546714. The trial court noted that the Probate Court, in that previous decision, rejected the claims raised here and ruled that "the estate was indisputably insolvent and that § 45a-428 confers the authority to sell specifically devised real estate under that circumstance to satisfy the debts of the estate and deceased." The trial court thereafter determined that under the doctrines of res judicata and collateral estoppel, the plaintiffs were precluded from prevailing in the present appeals.

"[T]he doctrines of collateral estoppel and res judicata, commonly referred to as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit. . . . Notwithstanding the differences between the two doctrines, we have noted their conceptual closeness . . . as well as their similarity of purpose." (Citations omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57–58 n.16, 808 A.2d 1107 (2002).

"The principles underlying the doctrine of res judicata, or claim preclusion, are well settled. [A] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. . . . Furthermore, the doctrine of claim preclusion . . . bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or *which might have been made*. . . . Probate court decrees . . . are final judgments for the purpose of the doctrine of res judicata." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gaynor* v. *Payne*, 261 Conn. 585, 595–96, 804 A.2d 170 (2002).

The principles underlying the related doctrine of collateral estoppel also are well established. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment . . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly ligitaged, and finally decided, it comes to rest." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 58. Summary judgment is an appropriate method for resolving issues of res judicata or collateral estoppel. See *Dontigney* v. *Roberts*, 73 Conn. App. 709, 710, 809 A.2d 539 (2002), cert. denied, 262 Conn. 944, 815 A.2d 675 (2003).

We conclude that the court properly rendered summary judgment in the defendants' favor with regard to the appeals related to the sale of the properties. Those appeals do raise the same issue, namely, whether the Probate Court, under the circumstances of this case, properly ordered the sale of the properties. The Probate Court's decree rested on conclusions concerning the estate's solvency, the status of the plaintiffs' ownership rights in the subject property and the applicability of § 45a-428. The court, in its decision of October 30, 1995, addressed all of those issues and resolved them adversely to the plaintiffs. The court rendered a valid final judgment on the merits. The doctrine of res judicata bars the plaintiffs from raising those claims in these appeals. By doing so, they seek relief on the basis of claims that already have been rejected as a matter of law in another court. Further, the doctrine of collateral estoppel bars the plaintiffs from relitigating issues that underlie the former adverse judgment.

### III

Finally, the plaintiffs challenge the court's decision to render summary judgment in the defendants' favor in the appeals related to the payment of insurance premiums. With respect to that claim, the plaintiffs argue that the court improperly (1) concluded that the defendants had an insurable interest in the properties and (2) permitted the defendants to withdraw funds from a restricted account containing $16,500 that, the plaintiffs argue, belongs to Rosalie Zanoni. We disagree.

In its February 15, 2002 memorandum of decision, the court rendered summary judgment in the defendants' favor with regard to those five appeals. The court noted, and we agree, that the parties did not dispute the facts underlying those appeals. The court summarized the relevant facts as follows: "The Newington Probate Court uttered orders authorizing the administrator to

purchase liability insurance coverage for two parcels of land on March 25, 1994; March 27, 1995; March 18, 1996; March 20, 1997; and March 3, 1998. The pleadings indicate that the Zanonis make no attack as to the reasonableness of the cost of such coverage, but rather assail the ability of the Probate Court to order the procurement of any such insurance coverage. It also appears undisputed that such coverage was, in fact, obtained and paid for by the administrator in compliance with the orders."[6] The court thereafter concluded, in regard to the plaintiffs' claims that the challenged decrees were improper because (1) the estate lacked any insurable interest in the properties and (2) the $16,500 from which the insurance premiums were paid were not estate funds, that the claims had been determined adversely to the plaintiffs in prior proceedings, and that principles of res judicata and collateral estoppel barred the plaintiffs from bringing those appeals.

We already have discussed the principles underlying the doctrines of res judicata and collateral estoppel in part II and need not reiterate them here. We will now discuss each aspect of the plaintiffs' claims to determine whether the court properly concluded that these doctrines barred the plaintiffs' appeals concerning the payment of insurance premiums.

A

In regard to the plaintiffs' claim that the Probate Court decrees were improper because the estate lacked

---

[6] Before addressing the merits of the plaintiffs' claims, the court addressed the defendants' claim that the issues raised in the five appeals challenging the orders to pay insurance premiums was moot. It stated that it "would be deciding whether to authorize insurance coverage for two parcels of land for years which have long passed and for which coverage was already purchased and provided." The court agreed with the defendants that it could not afford any practical relief to the plaintiffs in those appeals. The court, however, determined that the issue was of such a nature that it was capable of repetition but evaded review and proceeded to address the claims raised in the appeals.

an insurable interest in the properties, the court noted that in the prior action, *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546174, the plaintiffs' same claim was rejected. The court here stated that "the first ground for the plaintiffs' appeals in these five cases is rooted in the same claim which was defeated in [the earlier action. The court's] rulings regarding the insolvency of the estate, the applicability of § 45a-428, and the retention of these parcels as estate assets available to pay estate debts collaterally estop the plaintiffs from raising the absence of insurable interest based on title resting in Rosalie Zanoni."

We agree with the court's analysis. The plaintiffs, in those appeals, attempted to religate a claim that already had been raised and addressed in the prior proceeding. The court, in the prior proceeding, resolved the issue of the estate's rights in the property; it ruled that the Probate Court properly ordered the administrator to sell the properties to satisfy the debts of the estate. That determination resolved affirmatively the issue of whether the estate had an insurable interest in the properties.[7] In reaching its decision, the court rejected the same legal claim on which the plaintiffs based these appeals, namely, that Rosalie Zanoni had acquired absolute title to the properties at the time of Benny's death. Because the plaintiffs have raised the claim before, and a judicial tribunal has fully and fairly addressed the

[7] The plaintiffs also argue on appeal that the defendant administrators lacked an insurable interest in the properties because they did not have title to or possession of the properties and because they did not own the properties. The plaintiffs also argue that in the prior proceeding, *Zanoni* v. *Lynch*, supra, Superior Court, Docket No. 95-0546174, the court did not address the issue of title to the subject properties and that the court here improperly treated the issue as one that had been litigated in that prior proceeding. That argument lacks merit. The court, in the prior proceeding, determined that although title passed to Rosalie Zanoni at Benny's death, such title passed "subject to the administration of the estate." The court determined that under the circumstances of the case, the administrator had the right to interfere with Rosalie Zanoni's title and, in fact, sell the property.

merits of the claim, the court properly barred the plaintiffs from relitigating the issue in these appeals.

## B

In regard to the plaintiffs' claim that the Probate Court decrees were improper because they authorized the defendants to withdraw funds from an account containing $16,500 that was not part of Benny's estate, the court noted that this issue had been resolved in the prior action, *Zanoni* v. *Hudon*, supra, Superior Court, Docket No. 91-0391234. The court observed that in that prior action, which this court affirmed in *Zanoni* v. *Hudon*, supra, 48 Conn. App. 32, the trial court specifically determined that those moneys were "assets of the estate and [that] the plaintiff [Rosalie Zanoni had] no claim to these funds."

The court properly determined that the issue had been raised previously and was decided on the merits against the plaintiffs. The determination, in the prior action, that the $16,500 that the plaintiffs had paid to Benny's conservator in their failed attempt to purchase Benny's real property was in fact an asset of Benny's estate was not tangential to the court's holding; it was the very issue on which the plaintiffs prosecuted the prior action. In that case against the conservator of Benny's estate, the plaintiffs sought the return of the money that they had paid to him. The court determined that the moneys were part of the estate's assets and, consequently, that there could be no dispute that the defendant administrators could have used them to pay premiums on insurance policies for properties in which the estate had an insurable interest.[8] The trial court in

[8] The plaintiffs also argue that the defendant administrators were not authorized to draw on those funds, which were in a restricted account, to pay the premiums because Benny's will specified that all expenses were to be paid from the estate's residue. We note that here, the decrees of the Probate Court, and not Benny's will, authorized the defendant administrators to draw on those funds as they did. Nonetheless, the trial court did not address that issue, and we therefore decline to pass judgment on an issue

the prior proceeding, and this court on appeal as well, fully and fairly addressed the merits of the issue of whether the $16,500 was an asset of the estate, and the trial court here properly determined that the plaintiffs were barred from raising the claim again or from relitigating the issue.

The judgments are affirmed.

In this opinion the other judges concurred.

that was not addressed by the trial court. See *State* v. *Ritz Realty Corp.*, 63 Conn. App. 544, 549, 776 A.2d 1195 (2001).